UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



UNITED STATES OF AMERICA,

v.

DAVID PIRK and TIMOTHY ENIX,

Defendants.

**DECISION AND ORDER**

1:15-CR-00142 EAW

## **BACKGROUND**

The above-captioned matter involves 12 remaining defendants[1] (collectively, "Defendants") named in a 46-count Second Superseding Indictment (Dkt. 33) ("Indictment") returned on March 16, 2016, alleging various crimes, including a conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.*, in connection with the operation of the Kingsmen Motorcycle Club ("KMC").

On July 21, 2017, United States Magistrate Judge Michael J. Roemer, to whom various pretrial matters had been referred pursuant to 28 U.S.C. § 636(b)(1), issued a Report and Recommendation with respect to motions to suppress that had been filed by defendants David Pirk ("Pirk") and Timothy Enix ("Enix"). (Dkt. 686). Both Pirk and Enix moved to suppress evidence seized from their residences on May 12, 2016, upon

---

[1] Four Defendants—Edgar Dekay, II a/k/a Ed a/k/a Special Ed (Dkt. 412), Thomas Koszuta a/k/a Kazoo (Dkt. 296), Emmett Green (Dkt. 257), and Ryan Myrtle (Dkt. 330)— have pleaded guilty.

- 1 -

execution of search warrants obtained one day earlier. (Dkt. 392 (Enix's motion); Dkt. 434 (Pirk's motion)). In addition, Pirk and Enix moved to suppress statements they both allegedly made to law enforcement on December 11, 2014, as well as statements Pirk allegedly made on December 12, 2014, and Enix allegedly made on March 22, 2016. (*Id.*).

After receiving various briefing from Pirk, Enix, and the Government (*see* Dkt. 453 (Gov't Opp. to Enix motion); Dkt. 483 (Gov't Opp. to Pirk motion); Dkt. 478 (Enix reply); Dkt. 566 (Gov't post-hearing brief); Dkt. 567 (Enix post-hearing brief); Dkt. 588 (Enix Resp. to Gov't post-hearing brief); Dkt. 589 (Gov't Resp. to Enix post-hearing brief); Dkt. 612 (Enix Supp. Resp.); Dkt. 630 (Gov't Reply to Enix Supp. Resp.)), and conducting a suppression hearing and holding oral argument, Magistrate Judge Roemer issued his Report and Recommendation that Pirk's and Enix's motions be denied. (Dkt. 686).

On August 28, 2017, Enix timely filed objections to the Report and Recommendation, specifically challenging Magistrate Judge Roemer's recommendations concerning the motions to suppress evidence seized from the search of Enix's residence on May 12, 2016, and the statements he allegedly made to law enforcement on March 22, 2016. (Dkt. 763). On August 29, 2017, Pirk moved to join in the first argument presented in Enix's objections to the Report and Recommendation (Dkt. 765), and the Court granted that motion (Dkt. 766). Thus, Pirk and Enix do not challenge the Report and Recommendation's findings with respect to the motion to suppress the statements allegedly made by Pirk and Enix to law enforcement on December 11, 2014, and Pirk's alleged statements the following day. On September 11, 2017, the Government filed its Response to Defendants' Objections (Dkt. 771), and Enix filed a Reply Memorandum in further

support of his objections on September 15, 2017 (Dkt. 786). Oral argument was held before the undersigned on September 21, 2017, at which time the Court reserved decision. (Dkt. 800).

This Court reviews Enix's and Pirk's objections under a *de novo* standard. Fed. R. Crim. P. 59(b)(3); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997) (requiring a district court to make *de novo* determinations to the extent that a party makes specific objections to a magistrate judge's findings). Of course, the Court is not required to review *de novo* those portions of a report and recommendation to which objections were not filed. *Male Juvenile*, 121 F.3d at 38 ("We have adopted the rule that failure to object timely to a magistrate judge's report may operate as a waiver of any further judicial review of the decision, as long as the parties receive clear notice of the consequences of their failure to object."); *see also Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009) (to trigger the *de novo* review standard, objections to a report "must be specific and clearly aimed at particular findings in the magistrate judge's proposal").

The Court has conducted a thorough review of the Report and Recommendation, the parties' filings before this Court and Magistrate Judge Roemer, and the transcript of the suppression hearing. In addition, it has considered the arguments advanced by counsel at the oral argument held before the undersigned on September 21, 2017. After a *de novo* review of the issues for which objections were filed, and after a thorough consideration of

all the issues raised in Enix's and Pirk's suppression motions, the Court hereby accepts and adopts the Report and Recommendation (Dkt. 686) and overrules Enix's and Pirk's objections (Dkt. 763; Dkt. 765). Accordingly, for the reasons set forth below and in the Report and Recommendation, Enix's and Pirk's motions to suppress (Dkt. 392; Dkt. 434) are denied.

## PROBABLE CAUSE FOR ISSUANCE OF WARRANTS TO SEARCH RESIDENCES

"[P]robable cause to search a place exists if the issuing judge finds a 'fair probability that contraband or evidence of a crime will be found in a particular place' and a federal court must apply a 'totality-of-the-circumstances analysis' in pursuing this inquiry." *United States v. Ponce*, 947 F.2d 646, 650 (2d Cir. 1991) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

> [T]he duty of a court reviewing the validity of a search warrant is "simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." A search warrant issued by a neutral and detached magistrate is entitled to substantial deference, and "doubts should be resolved in favor of upholding the warrant."

*United States v. Rosa*, 11 F.3d 315, 326 (2d Cir. 1993) (citations omitted).

Here, United States Magistrate Judge Phillip R. Lammens of the Middle District of Florida signed search warrants for Enix's and Pirk's residences based upon an affidavit sworn to by FBI Task Force Officer ("TFO") Christopher Dipasquale, who testified at the suppression hearing before Magistrate Judge Roemer. The Report and Recommendation determined that the warrant affidavit from TFO Dipasquale provided a substantial basis for

- 4 -

Magistrate Judge Lammens to conclude that probable cause existed for the search of Enix's and Pirk's residences.

In his objections, which Pirk joined, Enix challenges the conclusion that Magistrate Judge Lammens was not misled by the purported failure to disclose information concerning a cooperating witness' credibility. According to Enix:

> The government knew that the 'evidence' to support a finding of probable cause being offered against Enix about his supposed involvement in alleged gun violence was from a 'crazy' cocaine-abusing cooperator who the government knew had perjured himself about the very topic of KMC gun illegality. Had the government presented a truthful application, the magistrate would not have found probable cause to search Enix's home. This conclusion is unavoidable.

(Dkt. 763 at 6).

"To suppress evidence obtained pursuant to an affidavit containing erroneous information, the defendant must show that: '(1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the [issuing] judge's probable cause finding.'" *United States v. Canfield*, 212 F.3d 713, 717-18 (2d Cir. 2000) (alteration in original) (quoting *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998)). Here, Enix cannot meet either prong of this test under *Franks v. Delaware*, 438 U.S. 154 (1978).

The search warrant affidavit, in paragraphs 41 through 43, described Enix's purported involvement in a dispute between KMC and a rival motorcycle club (the Pagans) in or about January 2014, based on information obtained from the cooperating witness, although it noted in paragraph 44 that the dispute was ultimately resolved without any

- 5 -

violence due to Enix's negotiation with the Pagans. (GE 1[2] ¶¶ 41-44). TFO Dipasquale revealed in the warrant affidavit that the cooperating witness originally testified before a federal grand jury on November 12, 2014, "regarding investigation of the Kingsmen Motorcycle club and Filip Caruso," and that on May 27, 2015, the witness "was indicted for, among other things, making false declarations" before the grand jury based on his November 12 testimony. (*Id.* at 18 n.2). TFO Dipasquale went on to state in the warrant affidavit that the witness thereafter executed a proffer agreement with the U.S. Attorney's Office, submitted to several law enforcement interviews, testified three additional times before a federal grand jury, and "explained, in sum and substance, that his prior false statements before the Grand Jury on November 12, 2014, were made as result of his obligation as a Kingsmen to protect higher-ranking members." (*Id.*).

In essence, Enix challenges the Government's purported propping up of the witness and its failure to disclose additional information that Enix believes impeaches the credibility of this witness—including more specifics concerning the witness' perjury and his alleged prior drug use. (Dkt. 763 at 15-16; *see id.* at 17-18). The issues raised by Enix may very well create questions in the minds of the jurors at trial as to the credibility of the witness—but that does not satisfy the *Franks* test. In other words, the search warrant affidavit may not have disclosed all the specifics that an effective defense attorney may elicit during cross-examination at trial in an attempt to impeach the cooperating witness' credibility. However, the affidavit plainly disclosed that the cooperating witness had been

---

[2] "GE" refers to the corresponding Government exhibit marked during the suppression hearing before Magistrate Judge Roemer.

indicted for lying to a federal grand jury. As a result, this Court agrees with the reasoning set forth in the Report and Recommendation that the record does not support Enix's contention that TFO Dipasquale deliberately or recklessly misled Magistrate Judge Lammens as to the credibility of the cooperating witness.[3]

With respect to the second step of the *Franks* test, the Second Circuit has explained:

> To determine if the false information was necessary to the issuing judge's probable cause determination, *i.e.*, material, "a court should disregard the

---

[3] Citing to the collective knowledge doctrine as referenced in *United States v. Colon*, 250 F.3d 130 (2d Cir. 2001), Enix argues that other law enforcement officers' knowledge concerning the cooperating witness is attributable to TFO Dipasquale, particularly since he swore out an affidavit indicating that he was making his affidavit based on both his personal knowledge and "information obtained from other agents and witnesses." (GE 1 at ¶ 2; *see* Dkt. 763 at 34-38; Dkt. 786 at 10-11). The Government argues that Enix is cherry-picking fragments of FBI 302s that TFO Dipasquale testified he was unaware and that were neither offered nor received into evidence at the suppression hearing (and thus, are not in the record before this Court). (*See* Dkt. 771 at 8-10).

Enix has not cited any persuasive authority in support of his position that the collective knowledge doctrine applies in the context of this case. *Colon* dealt with an entirely different factual scenario: whether the knowledge of a civilian 911 operator could be imputed to arresting officers (the Second Circuit held that it could not under the circumstances of that case). 250 F.3d at 134-35. The holding in the other case relied upon by Enix—*United States v. Medina-Reyes*, 877 F. Supp. 468 (S.D. Iowa 1995)—has been expressly limited by the Eighth Circuit to the "unusual and highly coercive arrangement" between the government and the confidential informant in that case. *United States v. Arnold*, 725 F.3d 896, 899 (8th Cir. 2013). Moreover, knowledge of the primary investigating officer in *Medina-Reyes* about that coercive arrangement was imputed to the officer who swore out the search warrant affidavit because the affiant had very little knowledge about the case and relied primarily on information supplied by the investigating officer. 877 F. Supp. at 472. That is a marked contrast from the present case.

However, even if knowledge of credibility issues with the cooperating witness was established in the suppression hearing record and could be imputed to TFO Dipasquale, the fact is that he revealed in the search warrant affidavit that the witness was indicted for perjuring himself before a federal grand jury. If the magistrate judge had wanted to explore that issue further, he certainly had an adequate basis for doing so. In other words, even accepting Enix's arguments concerning the additional impeachment material related to the cooperating witness, he has not established that TFO Dipasquale misled or deceived the magistrate judge about the credibility of the cooperating witness.

- 7 -

allegedly false statements and determine whether the remaining portions of the affidavit would support probable cause to issue the warrant." If the corrected affidavit supports probable cause, the inaccuracies were not material to the probable cause determination and suppression is inappropriate. As with the inclusion of false information, "[o]missions from an affidavit that are claimed to be material are governed by the same rules." The ultimate inquiry is whether, after putting aside erroneous information and material omissions, "there remains a residue of independent and lawful information sufficient to support probable cause."

*Canfield*, 212 F.3d at 718 (alteration in original) (citations omitted).

As concluded by the Report and Recommendation, even excising the information in the warrant affidavit attributable to the cooperating witness, the affidavit otherwise establishes probable cause to search Enix's residence.[4] (Dkt. 686 at 20-21). The affidavit sets forth facts to establish that Enix was a leader of the KMC (the Florida/Tennessee Regional President) (GE 1 at ¶ 22); that KMC is a criminal organization regularly engaged in the use of firearms to promote its unlawful purposes (*id.* at ¶¶ 15-31); that Enix told law enforcement on the date of his arrest (March 22, 2016) that there were several guns in his residence (*id.* at ¶ 38); and in the fall of 2013, Enix and other KMC members were "armed for bear" with handguns during a visit to the KMC Arcade Chapter clubhouse to "see where that chapter's loyalty lied" (*id.* at ¶ 39).

In fact, while the affidavit did not simply rely on the charging by indictment of Pirk and Enix with various crimes, including firearm offenses, the existence of the Indictment supports a finding of probable cause to believe a crime was committed. *United States v. Mouzon*, 16 CR 284 (CM), 2016 WL 7188150, at *4 (S.D.N.Y. Dec. 2, 2016) (judge

---

[4] The same conclusion applies to the search of Pirk's residence.

issuing search warrant could have relied solely on facts in indictment to establish probable cause that defendant engaged in criminal activity); *see United States v. Feng Ling Liu*, No. 12 Cr. 934(RA), 2014 WL 101672, at *5 (S.D.N.Y. Jan. 10, 2014) (citing cases approving practice of relying on indictment to establish probable cause, although acknowledging that Second Circuit does not appear to have reached the issue). Additionally, Enix admitted during his arrest that there were firearms in his residence (GE 1 at ¶ 38), and the affidavit similarly established that Pirk had firearms in his residence (*id.* at ¶¶ 33, 37). In other words, even without the information from the cooperating witness, the search warrant affidavit established probable cause to believe that a crime was committed and that evidence of the crime was located at Pirk's and Enix's residences. *See United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983).

Enix argues that when dealing with omissions under the *Franks* test, the Second Circuit supports inserting the omitted truths revealed at the suppression hearing, as opposed to setting aside any material omissions. *See United States v. Rajaratnam*, 719 F.3d 139, 146 (2d Cir. 2013). Using that logic, Enix argues that probable cause must be evaluated by considering the search warrant affidavit with the additional information that he contends should have been considered in connection with an assessment of the cooperating witness' credibility. (Dkt. 763 at 24-26). In the context of this case, the Court finds Enix's position to be a distinction without a difference. In other words, as the Second Circuit reiterated in *Rajaratnam*, "'[t]he ultimate inquiry is whether, after putting aside erroneous information and [correcting] material omissions, there remains a residue of independent and lawful information sufficient to support [a finding of] probable cause [or necessity].'" 719 F.3d

at 146 (alterations in original) (quoting *Canfield*, 212 F.3d at 718). Here, the information in the search warrant affidavit from the cooperating witness related to KMC's dispute with the Pagans. Whether that information is completely disregarded or whether the additional impeachment information about the cooperating witness is included (so as to cause the information about the Pagans to be disregarded), the result is the same: the affidavit contained sufficient probable cause to support the search warrants even without the information about the Pagans.

Finally, the Court rejects Enix's arguments about the alleged staleness and geographic remoteness of the Arcade incident from 2013, for the reasons articulated in the Report and Recommendation. (Dkt. 686 at 21-23).

## ENIX'S ALLEGED STATEMENTS TO LAW ENFORCEMENT ON MARCH 22, 2016

The Report and Recommendation concluded that Enix was indisputably under arrest and in law enforcement custody when he allegedly made a number of statements to FBI Special Agent Allyson Samuels on March 22, 2016, and that prior to making the alleged statements, Enix had invoked his right to counsel. (*Id.* at 27). Nonetheless, the Report and Recommendation also concluded that Agent Samuels credibly testified that after Enix invoked his right to counsel, "Enix asked her some questions about the case including who else was going to be arrested." (*Id.* at 28). The Report and Recommendation went on to conclude:

> Enix also made some general statements regarding the murders of Maue and Syzmanski. Samuels credibly testified that she did not ask defendant any questions designed to elicit these statements, nor did she ask him any questions about the case.

- 10 -

(*Id.*). Relying on *United States v. Cota*, 953 F.2d 753, 759 (2d Cir. 1992), and *United States v. Guido*, 704 F.2d 675, 677 (2d Cir. 1983), Magistrate Judge Roemer recommended that the motion to suppress the alleged statements made on March 22, 2016, be denied, as they were voluntarily made by Enix during his transport to the courthouse after his arrest. (Dkt. 686 at 28).

Enix objects to the Report and Recommendation, claiming that Agent Samuels was impeached during cross-examination at the suppression hearing "by the second page of her 302." (Dkt. 763 at 39). Enix also attacks any credit being given to Agent Samuels' perceptions due to her alleged preoccupation with driving and the manner in which she prepared the FBI 302. (*Id.* at 38 n.23). The Court has reviewed the transcript of the suppression hearing testimony, including Agent Samuels' testimony, and rejects Enix's interpretation of that testimony. In other words, a fair reading of the transcript simply does not support the alleged admissions during cross-examination to which Enix cites. Instead, Agent Samuels' testimony plainly supports Magistrate Judge Roemer's conclusion that Enix voluntarily offered statements that were not solicited by either Agent Samuels or Task Force Officer Francis. (Dkt. 763-1 at 160[5]). Moreover, while TFO Francis apparently did ask Enix some questions during the drive, TFO Francis asked those questions after Enix

---

[5] This page reference is the electronically-generated CM/ECF page number, not the transcript page.

- 11 -

had made the statements at issue.[6] (*Id.* at 174-76). Indeed, the chronological format of the FBI 302 prepared by Agent Samuels supports that conclusion. (*See* GE 3).

Magistrate Judge Roemer found that Agent Samuels testified credibly, and this Court finds that the record supports that determination. *See United States v. Lawson*, 961 F. Supp. 2d 496, 499 (W.D.N.Y. 2013) ("The Second Circuit has instructed that where a Magistrate Judge conducts an evidentiary hearing and makes credibility findings on disputed issues of fact, the district court will ordinarily accept those credibility findings."); *see also United States v. Raddatz*, 447 U.S. 667, 675-76 (1980) (district court is not required to rehear witness testimony when accepting a magistrate judge's credibility findings).

Enix contends that the cases on which the Report and Recommendation relies—*Cota* and *Guido*—are distinguishable from the present case, and he cites as support the decision in *United States v. Sykes*, No. 05-CR-6057T, 2006 WL 2265309 (W.D.N.Y. July 31, 2006), *report and recommendation adopted*, No. 05-CR-6057, 2006 WL 2711460 (W.D.N.Y. Sept. 20, 2006). In *Sykes*, the court found that law enforcement's statement encouraging the defendant to cooperate, not made in response to any question from the defendant and made while he was being escorted to the holding cell, reasonably should

---

[6] Magistrate Judge Roemer clarified that his Report and Recommendation to deny the motion to suppress applied only to the statements made by Enix to Agent Samuels and not to the statements allegedly made by Enix after TFO Francis' questions about a shooting over the weekend involving bikers and the layout and design of KMC patches. The Government indicated that it did not intend to use those latter statements as part of its case-in-chief at trial. (Dkt. 686 at 28 n.12).

have been expected to elicit an incriminating response from the defendant and thus was considered interrogation. 2006 WL 2265309, at *8. However, the facts of *Sykes* are plainly distinguishable. Here, where Agent Samuels simply "'supplied [Enix] with general information . . . in response to [his] own questions,' voluntary statements made by [Enix] . . . who understands [his] rights are not prohibited." *Cota*, 953 F.2d at 759 (quoting *Guido*, 704 F.2d at 677).

Enix also contends that the Report and Recommendation erroneously shifted the burden to Enix to prove that the statements were voluntary, by citing to Enix's failure to "put forth . . . affirmative evidence that his statements to Agent Samuels were the product of an interrogation or its functional equivalent." (Dkt. 686 at 28). This Court does not view the Report and Recommendation as placing any burden on Enix with respect to whether the statements were voluntary. Magistrate Judge Roemer held the Government to its heavy burden—which it met through the testimony of Agent Samuels—and the Report and Recommendation simply noted that there was no evidence contradicting Agent Samuels' version of events. In any event, based on this Court's *de novo* review, it concludes that the Government met its burden to establish by a preponderance of the evidence that Enix's statements were voluntarily made and not the result of any interrogation. As a result, the Report and Recommendation appropriately recommended that this Court deny Enix's motion to suppress his statements.

## CONCLUSION

The Court has conducted a careful review of the Report and Recommendation and the record pertaining to the suppression motions, including the filings before Magistrate Judge Roemer and the transcript of the suppression hearing. Based upon its *de novo* review, the Court concludes that Enix's and Pirk's motions to suppress (Dkt. 392; Dkt. 434) the evidence seized pursuant to a search warrant executed at their residences on May 12, 2016, should be denied, and it further concludes that Enix's motion to suppress the statements he allegedly made on March 22, 2016, should be denied. In addition, with respect to the other issues initially raised by Enix and Pirk in their suppression motions, the Court finds no reason to reject or modify the Report and Recommendation of Magistrate Judge Roemer. Therefore, the Court accepts and adopts the Report and Recommendation (Dkt. 628) and overrules Enix's and Pirk's objections (Dkt. 763; Dkt. 765). For the reasons set forth above and in the Report and Recommendation, this Court denies Enix's and Pirk's motions to suppress (Dkt. 392; Dkt. 434).

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: November 9, 2017
Rochester, New York