UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

DAVID PIRK, ANDRE JENKINS a/k/a
Little Bear, and TIMOTHY ENIX a/k/a Blaze,

                Defendants.

**DECISION AND ORDER**

1:15-CR-00142 EAW

---

## I. INTRODUCTION

The Court previously issued a Decision and Order (Dkt. 1491) denying the post-verdict motions filed by Defendants David Pirk ("Pirk") (Dkt. 1325), Andre Jenkins ("Jenkins") (Dkt. 1326), and Timothy Enix ("Enix") (Dkt. 1322) (collectively "Defendants"), except to the extent that those post-verdict motions challenged Defendants' convictions on Count 2 of the Second Superseding Indictment (Dkt. 33) based on *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), which held that 18 U.S.C. § 16(b)'s "crime of violence" definition as incorporated into the Immigration and Nationality Act's definition of aggravated felony, was unconstitutionally void for vagueness. This Decision and Order addresses that remaining issue—Defendants' *Dimaya*-based challenges to their convictions on Count 2 charging violations of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2. Based on Second Circuit precedent, this Court must deny Defendants' post-verdict motions seeking to set aside their convictions on Count 2.

## II. BACKGROUND

After a trial spanning four months, a jury convicted Defendants of all counts with which they were charged in the Second Superseding Indictment, including Count 1 charging a conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, in connection with the operation of the Kingsmen Motorcycle Club ("KMC"), and Count 2 charging possession of firearms in furtherance of the RICO conspiracy in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2. (Dkt. 1258; Dkt. 1259). The Second Superseding Indictment alleged that the RICO conspiracy charged in Count 1 was a "crime of violence for which [the defendants] may be prosecuted in a court of the United States." (Dkt. 33 at 30). Sentencing is scheduled for February 28, 2019. (Dkt. 1409; Dkt. 1410; Dkt. 1411).

On June 25, 2018, Defendants filed post-verdict motions pursuant to Federal Rules of Criminal Procedure 29(c) and 33. (Dkt. 1322 (Enix); Dkt. 1325 (Pirk); Dkt. 1326 (Jenkins)). On August 1 and 3, 2018, the Government filed responses in opposition to each of Defendants' motions. (Dkt. 1367 (Enix Opp.); Dkt. 1370 (Pirk Opp.); Dkt. 1371 (Jenkins Opp.)). On August 10, 2018, Defendants each filed reply papers in further support of their motions. (Dkt. 1379 (Jenkins Reply); Dkt. 1381 (Pirk Reply); Dkt. 1382 (Enix Reply)). On August 17, 2018, the Government filed a consolidated sur-reply. (Dkt. 1388). Oral argument was held before the undersigned on August 21, 2018, at which time the Court reserved decision. (Dkt. 1391).

Among the issues raised by Defendants was a challenge to the Count 2 convictions based on *Dimaya*, which was decided by the Supreme Court on April 17, 2018, when the

parties and the Court were in the midst of this four-month trial. At the time the Court charged the jury in this case (on May 15 and 16, 2018), the Second Circuit had not ruled on the impact of *Dimaya* on a violation of 18 U.S.C. § 924(c), but about a week before that jury charge, on May 9, 2018, the Second Circuit issued an amended decision in *United States v. Hill*, 890 F.3d 51 (2d Cir. 2018), *petition for cert. filed* (U.S. Nov. 20, 2018) (No. 18-6798), removing its discussion about whether Hobbs Act robbery constituted a crime of violence under § 924(c)(3)(B) and expressing no view as to whether that subsection was void for vagueness. *Id.* at 53 n.2. In addition, at the time the Court charged the jury in this case, only one circuit court had addressed the impact of *Dimaya* on § 924(c)—the Tenth Circuit Court of Appeals—and that court concluded that *Dimaya*'s reasoning extended to § 924(c)(3)(B) and rendered the statute unconstitutionally vague. *United States v. Salas*, 889 F.3d 681, 686 (10th Cir. 2018), *petition for cert. filed* (U.S. Oct. 3, 2018) (No. 18-428).

Due to these developments, the Court posed special interrogatories to the jury asking for specific findings as part of its consideration of Count 2, regarding the racketeering activity (if any) that each Defendant agreed would be committed by a member of the conspiracy. Not all charged predicate acts were part of the questions posed to the jury; only those that could potentially qualify as crimes of violence if charged as substantive offenses—namely murder (under New York and Florida law), robbery (under New York and Florida law, and the Hobbs Act), and kidnapping (under Florida law).

The jury returned a guilty verdict on Count 2 with respect to each Defendant. In answering the special interrogatories, the jury found for each Defendant as follows:

- Pirk agreed with at least one other member of the conspiracy that murder in violation of both New York and Florida law, robbery in violation of New York law, and Hobbs Act robbery, would be committed by a member of the conspiracy in the conduct of the affairs of the enterprise;

- Jenkins agreed with at least one other member of the conspiracy that murder in violation of both New York and Florida law would be committed by a member of the conspiracy in the conduct of the affairs of the enterprise; and,

- Enix agreed with at least one other member of the conspiracy that murder in violation of Florida law would be committed by a member of the conspiracy in the conduct of the affairs of the enterprise.

(Dkt. 1258 at 3-8). The jury otherwise answered "no" with respect to the questions posed by the special interrogatories. (*Id.*).

In addition to the special interrogatories posed to the jury as part of its consideration of Count 2, pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the jury also was asked to answer the following questions with respect to Pirk and Jenkins as part of its consideration of Count 1, due to the increase in the maximum penalty from 20 years to life in prison in the event of a positive finding by the jury: whether the defendant under consideration "as part of the racketeering conspiracy, committed, or aided, abetted, counseled, commanded, induced, or procured" the murders of Paul Maue and Daniel "DJ" Szymanski on September 6, 2014, in violation of New York law. (Dkt. 1258 at 1-2). The jury answered "yes" for both murders with respect to Pirk and Jenkins. (*Id.*).

After oral argument of the post-verdict motions, the Second Circuit issued its decision in *United States v. Barrett*, 903 F.3d 166 (2d Cir. 2018), *petition for cert. filed* (U.S. Dec. 3, 2018) (No. 18-6985), addressing the impact of *Dimaya* on 18 U.S.C. § 924(c). A couple weeks later—on September 25, 2018—this Court conducted a status conference and agreed to accept further briefing and hear additional oral argument. (Dkt. 1408). The Government and Enix filed simultaneous supplemental briefs on November 7, 2018 (Dkt. 1462 (Enix); Dkt. 1463 (Gov't)), and oral argument was held before the undersigned on November 14, 2018 (Dkt. 1465), at which time the Court reserved decision.

## III. THE TIMELINESS OF DEFENDANTS' *DIMAYA*-BASED CHALLENGES

The Government opposes Defendants' *Dimaya*-based challenges to the Count 2 convictions, arguing that the issue was not timely raised prior to trial as required by Fed. R. Crim. P. 12(b)(3). (Dkt. 1367 at 4-7). The Court agrees with the Government that the proper mechanism to raise this issue would have been a Rule 12(b)(3) pretrial motion, and while Defendants could have raised the issue through such a motion, they did not. Nevertheless, the Court concludes that Defendants have demonstrated good cause for the failure to raise the issue and, accordingly, the motions directed to Count 2 based upon *Dimaya* are not barred on timeliness grounds.

Federal Rule of Criminal Procedure 12(b)(3) provides that "defenses, objections, and requests must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3). Examples are "defect[s] in instituting the prosecution" and "a defect in the indictment or information." Fed. R. Crim. P. 12(b)(3)(A)-(B). Federal Rule of Criminal

Procedure 12(c)(3) sets forth the consequences of failing to make a timely motion under Rule 12(b)(3): "If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely. But a court may consider the defense, objection, or request if the party shows good cause." Fed. R. Crim. P. 12(c)(3).

Defendants[1] contend that they have good cause for failing to raise the *Dimaya* issue before trial because the Supreme Court decided *Dimaya* while the trial was underway, and before that decision was issued, the Second Circuit had foreclosed the argument in *United States v. Hill*, 832 F.3d 135 (2d Cir. 2016). In *Hill*, the Second Circuit concluded that § 924(c)(3)(B) was not void for vagueness under *Johnson v. United States*, 135 S. Ct. 2551 (2015) (holding that increased sentence under residual clause of Armed Career Criminal Act (ACCA) violated due process). *Id.* at 145. Further, the *Hill* court specifically stated that it was unpersuaded by those cases—including the Ninth Circuit's decision in *Dimaya*—that had concluded § 16(b) was void for vagueness. *Id.* at 145-50. But after *Dimaya*, on May 9, 2018, the Second Circuit amended *Hill* and eliminated the portion of its decision that concluded that § 924(c)(3)(B) was not void for vagueness. *See Hill*, 890 F.3d at 53 n.2. In Defendants' view, based on the state of the law in the Second Circuit during the pretrial phase, they had good cause for raising the *Dimaya* issue only during trial, once it became clear that the issue was viable.

---

[1] Counsel for Enix took the lead on briefing and arguing the *Dimaya* issues as part of the post-verdict motions, but both Jenkins and Pirk joined in Enix's arguments. (Dkt. 1325-1 at 16; Dkt. 1326 at 8). Accordingly, even though the arguments are only set forth with specificity in the briefing filed on behalf of Enix, the Court refers to the challenges as being lodged by all three Defendants.

The Court finds good cause for Defendants' failure to raise the issue concerning § 924(c)(3)(B)'s constitutionality pretrial. The Second Circuit had squarely foreclosed the argument in its 2016 decision in *Hill* and rejected the Ninth Circuit's decision in *Dimaya*. Given the status of the law in this Circuit, Defendants had no reason to question whether § 924(c)(3)(B) was void for vagueness; any such challenge would have been squarely rejected under the 2016 decision in *Hill*. With the change in the law, the Court finds that Defendants have presented good cause for their failure to raise the issue in a pretrial motion to dismiss, and the Court will accordingly address the merits.

### IV. UNDER THIS CIRCUIT'S *PATINO/CHIMURENGA* PRECEDENT, THE RICO CONSPIRACY IS A CRIME OF VIOLENCE ON A TRADITIONAL CATEGORICAL APPLICATION OF § 924(c)(3)(A) AND § 924(c)(3)(B)[2]

18 U.S.C. § 924(c) makes it a federal crime to use or carry a firearm during and in relation to a crime of violence, or to possess a firearm in furtherance of a crime of violence. The statute, in subsection (c)(3), defines "crime of violence" as a federal offense that is a felony and—

---

[2] The Government has argued that at least for Pirk and Jenkins, the Court can conclude that Count 1 is a crime of violence relying exclusively on § 924(c)(3)(A) because of the sentencing factors involving the murders of Paul Maue and Daniel "DJ" Szymanski that were considered by the jury pursuant to *Apprendi*, 530 U.S. 466. According to the Government, the jury's findings with respect to those sentencing factors caused the charged RICO conspiracy to satisfy § 924(c)(3)(A) and categorically include as part of its elements "the use, attempted use, or threatened use of physical force against the person or property of another." (Dkt. 1463 at 5-7). The Court specifically does not resolve the issue of whether Count 1 is a crime of violence by exclusive reference to § 924(c)(3)(A). In other words, the Court's findings in this Decision and Order necessarily rely on § 924(c)(3)(B). If subsection (c)(3)(B) is ultimately declared unconstitutional, as some circuits have concluded, *see infra* note 7, then the issue of whether the *Apprendi* factors nonetheless qualify the RICO conspiracy as a crime of violence based solely on § 924(c)(3)(A) will need to be resolved.

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Clause "A" has been referred to as the "elements clause" or "force clause," and clause "B" has been referred to as the "residual clause" or "risk-of-force clause." *See Dimaya*, 138 S. Ct. at 1211; *Hill*, 890 F.3d at 54 & n.5.

"[I]t has long been the law in this circuit that a conspiracy to commit a crime of violence is itself a crime of violence under 18 U.S.C. § 924(c)(3)." *Barrett*, 903 F.3d at 175. Thus, "if a substantive offense is categorically a crime of violence under § 924(c)(3)(A)" then "a conspiracy to commit that crime, by its 'very nature' presents a substantial risk of physical force, so as also to be a violent crime under § 924(c)(3)(B)." *Id.* This precedent is based on *United States v. Patino*, 962 F.2d 263, 267 (2d Cir. 1992), and *United States v. Chimurenga*, 760 F.2d 400, 404 (2d Cir. 1985). According to the *Barrett* court, neither *Dimaya* nor *Johnson* require abandonment of the *Patino/Chimurenga* precedent. 903 F.3d at 176. The "ordinary case" analysis that was found problematic in *Dimaya* and *Johnson* is not utilized under the *Patino/Chimurenga* line of cases. *Id.* at 177. Instead, this Circuit employs "traditional categorical analysis" to both § 924(c)(3)(A) and § 924(c)(3)(B):

> Focusing first on the object *offense* part of the agreement element, a court properly considers whether that offense is a categorically violent crime under § 924(c)(3)(A). If it is not, that is the end of the categorical inquiry. But if the object offense is itself categorically violent . . . a court then turns its

attention to the agreement element's requirement for two or more persons to join in a *common scheme* to achieve the object.

*Id.* "[T]he agreement element of conspiracy so heightens the likelihood that the violent objective will be achieved that the conspiracy itself can be held categorically to present a substantial risk of physical force." *Id.*

In other words, in this Circuit, a court evaluates whether the underlying object of the conspiracy—in this case a RICO violation—is categorically a crime of violence. If it is, then a conspiracy to commit that offense is also categorically a crime of violence without having to resort to any "ordinary case" analysis. By its very nature, a conspiracy to commit a crime of violence presents a "substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(B). Thus, a "traditional categorical approach" is used throughout the analysis relying on both § 924(c)(3)(A) and § 924(c)(3)(B). *See United States v. Elder*, 88 F.3d 127, 129 (2d Cir. 1996) ("We have held in several circumstances that conspiracy is itself a crime of violence when its objectives are violent crimes or when its members intend to use violent methods to achieve its goals.").[3]

Applying these principles to this case, the Court first evaluates whether the object offense of the conspiracy—a RICO violation—is categorically a crime of violence. The

---

[3] In the post-verdict motion briefing, Defendants have argued that Second Circuit case law finding that a RICO conspiracy constitutes a crime of violence based solely on § 924(c)(3)(A) is incorrect. (*See, e.g.*, Dkt. 1462 at 8-12). *Barrett* appears to have clarified some of the earlier Second Circuit precedent in this regard, explaining that both § 924(c)(3)(A) and § 924(c)(3)(B) are used in the analysis of whether a conspiracy is a crime of violence, applying a traditional categorical approach to both clauses. 903 F.3d at 177 n.9 ("To the extent our precedent has not always been clear in identifying a

law in this Circuit is clear—a court must look to the predicate offenses to determine whether a RICO charge amounts to a crime of violence.[4] *United States v. Ivezaj*, 568 F.3d 88, 96 (2d Cir. 2009). "[W]here the government proves (1) the commission of at least two acts of racketeering and (2) at least two of those acts qualify as 'crime[s] of violence' under § 924(c), a § 1962 conviction serves as a predicate for a conviction under § 924(c)." *Id.*; *see United States v. Praddy*, 729 F. App'x 21, 23 (2d Cir. 2018) ("A racketeering conspiracy is a crime of violence if at least one of its objects is committing a crime of violence."), *cert denied*, 139 S. Ct. 185 (2018); *United States v. Scott*, 681 F. App'x 89, 95 (2d Cir. 2017) ("Where, as here, the jury finds two RICO predicates constituting crimes of violence have been proven, *Ivezaj* instructs us to treat the RICO offense as a crime of violence, and *Elder* instructs us to treat the conspiracy to commit that offense—that is, the

---

conspiracy's object offense as a violent crime under the elements definition of § 924(c)(3)(A), we do not pursue the point. We conclude only that, where, as here, the elements establish an object offense as a categorical crime of violence under § 924(c)(3)(A), the conspiracy itself—by virtue of its agreement element—is a categorical crime of violence under § 924(c)(3)(B).").

[4] Defendants have argued throughout their post-verdict briefing that the Second Circuit case law that looks beyond the elements of the RICO statute and examines the underlying predicate offenses to employ a "modified categorical approach" is not consistent with Supreme Court precedent of *Taylor v. United States*, 495 U.S. 575 (1990), *Mathis v. United States*, 136 S. Ct. 2243 (2016), and *Descamps v. United States*, 570 U.S. 254 (2013). (*See, e.g.*, Dkt. 1322-1 at 12-18; Dkt. 1462 at 12-18). This Court does not suggest that Defendants' arguments lack merit. *See generally United States v. Williams*, 898 F.3d 323 (3d Cir. 2018) (discussing difficulties in applying teachings of *Taylor*, *Mathis*, and *Descamps* to RICO statute). However, this Court is not writing on a clean slate. The Court is bound by the very clear precedent in this Circuit that calls for an analysis of the underlying predicate acts when determining whether a RICO offense constitutes a crime of violence.

RICO conspiracy charged here—as a crime of violence as well."), *cert. denied sub nom. Smith v. United States*, 138 S. Ct. 642 (2018), *reh'g denied*, 138 S. Ct. 1182 (2018), and *cert. denied sub nom. Hampton v. United States*, 138 S. Ct. 642 (2018), and *cert. denied*, 138 S. Ct. 643 (2018).

Here, the offense object—the RICO violation—is a crime of violence because it involved multiple racketeering acts that categorically qualify as crimes of violence, including Hobbs Act robbery and murder under New York law.[5] In other words, murder under New York law and Hobbs Act robbery have as part of their elements the use, attempted use, or threatened use of force, and Defendants have not attempted to argue otherwise. *See Hill*, 890 F.3d at 56-60 (Hobbs Act robbery is categorically a crime of violence under elements clause); *Praddy*, 729 F. App'x at 24 (attempted murder is categorically a crime of violence under elements clause); *Scott*, 681 F. App'x at 95 (attempted murder in the second degree is categorically a crime of violence under elements clause). As a result, a RICO conspiracy involving the predicate acts of Hobbs Act robbery

---

[5] The Court does not reach the issue of whether the predicate acts of murder in violation of Florida Statutes Annotated §§ 782.04(1)(A)(1), 782.04(1)(a)(2)(d)-(f), and 777.04(1)-(3), categorically constitute crimes of violence under § 924(c)(3)(A). While murder or attempted murder in violation of those statutes include elements of the use, attempted use, or threatened use of force, during closing arguments the Government focused on conspiracy and solicitation to commit murder in violation of Florida law. Nonetheless, the jury was free to reject the Government's theory of the case, and while the jury concluded that all three Defendants violated these Florida statutes with respect to murder, the jury was not asked to specifically identify the means by which the statutes were violated (*e.g.*, attempt, solicitation, conspiracy). Because it does not need to, the Court does not reach a conclusion on whether the charged predicate acts of murder in violation of Florida Statutes Annotated §§ 782.04(1)(a)(1), 782.04(1)(a)(2)(d)-(f), and 777.04(1)-(3), satisfy the requirements of § 924(c)(3)(A).

and murder in violation of New York law categorically qualifies as a crime of violence because it, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Importantly, this conclusion is not dependent on which predicate acts each Defendant specifically agreed would be committed as part of the RICO conspiracy. In other words, the special interrogatories posed as part of Count 2 are relevant only insofar as they identify which predicate acts the jury found were agreed upon as part of the RICO conspiracy—each individual Defendant's agreement is not determinative. The Court examines the conspiracy as a whole, not each Defendant separately.

"[T]he agreement proscribed by section 1962(d) is [a] conspiracy to participate in a charged enterprise's affairs, not [a] conspiracy to commit predicate acts." *United States v. Yannotti*, 541 F.3d 112, 121 (2d Cir. 2008) (alterations in original) (quoting *United States v. Persico*, 832 F.2d 705, 713 (2d Cir. 1987)). Nothing about the verdict sheet overrides the body of Second Circuit caselaw that holds that "a conspirator need not be fully informed about his co-conspirators' specific criminal acts provided that he agreed to participate in the broader criminal conspiracy and the acts evincing participation were not outside of the scope of the illegal agreement." *Id.* at 122. In other words, a conspirator need not have full knowledge of all aspects of the conspiracy:

> [T]here is no rule requiring the government to prove that a conspirator knew of all criminal acts by insiders in furtherance of the conspiracy.
> No theory requires co-conspirators to have such knowledge. *To be convicted as a conspirator, one must be shown to have possessed knowledge of only the general contours of the conspiracy.* . . . While we have held that too little knowledge may undermine a conspiracy conviction, there is no requirement that a defendant must have been omniscient.

*United States v. Zichettello*, 208 F.3d 72, 100 (2d Cir. 2000) (emphasis added); *see United States v. Ciccone*, 312 F.3d 535, 542 (2d Cir. 2002) (stating that "a conspirator charged with racketeering conspiracy need not commit or even agree to commit the predicate acts . . . to be found guilty of the racketeering conspiracy, for it suffices that he adopt[] the goal of furthering or facilitating the criminal endeavor" (quotation omitted)). Thus, if the charged RICO conspiracy qualifies as a crime of violence, then any member of the conspiracy may be found guilty of violating § 924(c) by possessing firearms in furtherance of that conspiracy, even if the defendant did not specifically agree to the commission of violent predicate acts.[6] In other words, the critical question is whether a defendant possessed firearms in furtherance of the conspiracy or aided and abetted the same—not whether a defendant possessed firearms in furtherance of an underlying predicate act.

Although the jury did not find that Enix agreed to the commission of murder under New York law or Hobbs Act robbery, *it did find* that he was part of the RICO conspiracy, that the RICO conspiracy's objectives included crimes of violence (New York murder and Hobbs Act robbery), and that Enix possessed firearms or aided and abetted the possession of firearms in furtherance of the RICO conspiracy. Thus, under existing Second Circuit precedent, Enix was found guilty of possessing firearms in furtherance of a crime of

---

[6] In fact, the jury's findings with respect to the special interrogatories posed as part of Count 2 are arguably irrelevant because the jury concluded as part of its consideration of Count 1 that the murders of Paul Maue and Daniel "DJ" Szymanski were part of the RICO conspiracy. In other words, the jury's findings with respect to those sentencing factors as part of Count 1 support the conclusion that the RICO conspiracy constituted a crime of violence.

violence, based upon a traditional categorical approach under § 924(c)(3)(A) and § 924(c)(3)(B). It does not matter whether Enix specifically agreed to the commission of categorical crimes of violence involving the use, attempted use, or threatened use of force. The jury found Enix to be part of a conspiracy that had as its objectives the commission of categorical crimes of violence involving the use, attempted use, or threatened use of force. The jury further found that the Government proved beyond a reasonable doubt the elements necessary for Enix's conviction on Count 2. As a result, like Pirk and Jenkins, Enix was guilty of the charges in Count 2, and Defendants' motion to set aside their convictions on Count 2 must be denied.

## V. USING A CONDUCT-SPECIFIC APPROACH, THE RICO CONSPIRACY CONSTITUTED A CRIME OF VIOLENCE

In *Barrett*, the Second Circuit alternatively concluded that even if the charged conspiracy (in that case, Hobbs Act conspiracy) did not constitute a crime of violence based upon a traditional categorial application of § 924(c)(3)(A) and § 924(c)(3)(B), the defendant would not be entitled to relief:

> Section 924(c)(3)(B) can be applied to a defendant's case-specific conduct, with a jury making the requisite findings about the nature of the predicate offense and the attending risk of physical force being used in its commission. Such a conduct-specific approach avoids both the Sixth Amendment right-to-trial and due process vagueness concerns identified in *Dimaya* and *Johnson*.

903 F.3d at 178. The *Barrett* court recognized that *Dimaya* raised serious constitutional questions as to the continued viability of a categorical approach to § 924(c)(3)(B) based upon an "ordinary case" analysis. *Id.* However, both *Dimaya* and *Johnson* acknowledged that there was no constitutional vagueness inherent in a substantial risk definition of a crime

of violence when applied to case-specific conduct—or a defendant's "real-world conduct." *Id.* at 178-79. As explained by the Second Circuit:

> Submitting § 924(c)(3)(B) determinations to trial juries for conduct-specific determinations thus avoids not only the constitutional vagueness concerns that *Dimaya* and *Johnson* located in the categorical ordinary-case standard, but also the Sixth Amendment right-to-trial concern that originally prompted the Supreme Court to mandate a categorical approach to residual definitions of crimes of violence.

*Id.* at 179. Thus, the *Barrett* court concluded that § 924(c)(3)(B) was not unconstitutionally vague.[7]

Here, applying § 924(c)(3)(B) to Defendants' "real-world conduct," it is apparent that they were involved in a conspiracy that had as part of its objectives crimes involving a substantial risk that physical force against the person or property of another may be used in the course of committing the offense—whether those crimes be the dispute with the

---

[7] The Court recognizes that notwithstanding *Barrett*, Defendants argue that § 924(c)(3)(B) is unconstitutionally vague and it is improper to apply a conduct-specific approach. Nonetheless, this Court is bound by the Second Circuit's decision in *Barrett*. Ultimately, the Supreme Court will likely resolve the issue concerning § 924(c)(3)(B)'s constitutionality due to a developing circuit split on the issue. According to a recent decision from the Second Circuit, post-*Dimaya* the First and Eleventh Circuits have recognized the constitutionality of § 924(c)(3)(B) based on a conduct-specific approach, while the Fifth, Tenth, and District of Columbia Circuits have concluded that the subsection is unconstitutionally vague. *United States v. Costa*, No. 15-3292, 2018 WL 6304193, at *2 n.* (Dec. 3, 2018) (citing *United States v. Davis*, 903 F.3d 483, 485-86 (5th Cir. 2018), *petition for cert. filed* (U.S. Oct. 3, 2018) (No. 18-431), *United States v. Eshetu*, 898 F.3d 36, 37-38 (D.C. Cir. 2018), and *United States v. Salas*, 889 F.3d 681, 686 (10th Cir. 2018), *petition for cert. filed* (U.S. Oct. 3, 2018) (No. 18-428), as finding the subsection unconstitutional; and *United States v. Douglas*, 907 F.3d 1, 1 (1st Cir. 2018), and *Ovalles v. United States*, 905 F.3d 1231, 1234 (11th Cir. 2018) (en banc), as holding otherwise). In addition, the Seventh Circuit pre-*Dimaya* took the position that § 924(c)(3)(B) was unconstitutionally vague. *United States v. Cardena*, 842 F.3d 959, 996 (7th Cir. 2016).

Pagans in 2014 (serving as the basis for the racketeering acts involving murder under Florida law), the shutdown of the KMC Springville chapter in June 2013 (serving as the basis for the racketeering acts involving Hobbs Act robbery), the murders of Paul Maue and Daniel "DJ" Szymanski in September 2014 (serving as the basis for the racketeering acts involving murder under New York law), or any one of the number of other acts of violence or attempted or threatened acts of violence that were depicted through the evidence introduced at trial. As in *Barrett*, "violence was the very hallmark of the charged conspiracy," 903 F.3d at 184—it was how the KMC operated and conducted its affairs.

Defendants contend that because the jury was not specifically instructed on § 924(c)(3)(B), it would be improper to sustain their convictions using a conduct-specific approach. (Dkt. 1462 at 4-6).[8] In this case, consistent with *Elder*, the jury was charged that a RICO conspiracy constituted a crime of violence if one or more of "its objectives are violent crimes or when its members intend to use violent methods to achieve its goals." *See* 88 F.3d at 129. The Court instructed that if the jury found the defendant under consideration guilty of the RICO conspiracy charged in Count 1, in the jury's consideration of Count 2, they must:

> determine whether the government has proven that one or more of the objects of the racketeering conspiracy charged in Count 1 was committing a crime of violence. I instruct you that a crime of violence is defined as an offense that is a felony *that has as an element the use, attempted use, or threatened*

---

[8] Defendants' argument concerning the jury instructions only pertains to the conduct-specific approach—it is not applicable to the analysis set forth in the earlier part of this Decision and Order which concludes that the convictions on Count 2 stand based upon a traditional categorical application of § 924(c)(3)(A) and § 924(c)(3)(B) under the *Patino/Chimurenga* precedent.

> *use of physical force against the person or property of another.* As I will explain a bit later, you will be asked to make specific findings as to certain racketeering activity that the defendant under consideration agreed would be committed by a member of the conspiracy as part of your consideration of Count 2.

*See* Court's Final Charge (emphasis added).[9]

Thus, in asking the jury to make its findings with respect to Count 2, the Court instructed the jury that it needed to decide whether Count 1 was a crime of violence, but it used the definition of crime of violence from § 924(c)(3)(A) as opposed to § 924(c)(3)(B). In the Court's view, this means that the jury's understanding of the term "crime of violence" was more restrictive than was otherwise required—a crime that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, by its nature will involve a substantial risk that physical force against the person or property of another may be used in the course of committing the offense. On the other hand, the reverse is not necessarily true (i.e., a crime that by its nature involves a substantial risk of force does not need to include as an element the use, attempted use, or threatened

---

[9] Defendants raised the issue with respect to the jury charge for the first time in the supplemental briefing submitted on November 7, 2018. During trial, the Government requested that the Court incorporate the language from § 924(c)(3)(B) into its instructions. At the time, based upon the caselaw developments in mid-May 2018, the Court was uncertain as to the constitutionality of § 924(c)(3)(B) and, therefore, the Court incorporated into its instructions the language from the subsection of the statute that plainly withstood constitutional scrutiny (§ 924(c)(3)(A)). Of note, there was no instruction on this issue requested by Defendants that the Court declined to provide. At the charge conference, Defendants maintained their position that *Dimaya* required dismissal of Count 2 and the jury should not be charged on that count. In other words, the challenge now launched by Defendants to the jury charge was not raised by Defendants during trial. Nonetheless, the Court addresses Defendants' argument about the jury instructions without deciding whether Defendants have properly preserved any such objections.

use of physical force). In other words, the language under § 924(c)(3)(B) covers conduct that is broader than § 924(c)(3)(A), and it was the latter that was charged to the jury. As a result, any error in the jury instructions on this point benefited Defendants by providing a more restrictive definition of crime of violence.

In any event, the evidence presented at trial and reflected in the jury's findings could only support a finding that the charged conspiracy, by its nature, involved a substantial risk of the use of physical force. Defendants were involved in murders in New York, Hobbs Act robbery in New York, and conspiracy or solicitation of murder in Florida. Moreover, separate and apart from the jury's specific findings, evidence was introduced at trial depicting many other acts of violence and threats in furtherance of the RICO conspiracy. Even in cases where the jury was not asked to make any findings as was requested of the jury in this case, the Second Circuit has determined that the failure to instruct on the conduct-specific approach under similar circumstances is harmless error. *See United States v. Climico*, No. 14-4304-cr, 2018 WL 5371442, at *4 (2d Cir. Oct. 29, 2018) ("While a conduct-specific § 924(c)(3)(B) determination was not made by the jury here, any error in failing to require the jury to make such a finding was harmless beyond a reasonable doubt."); *Barrett*, 903 F.3d at 184 ("This real-world evidence can only support a finding that the charged conspiracy, *by its nature*, involved a substantial risk of the use of physical force. Indeed, no other conclusion is rationally possible. Thus, the failure to submit the § 924(c)(3) inquiry to the jury is necessarily harmless error beyond a reasonable doubt."). This Court likewise concludes that any error in the jury charge was harmless beyond a reasonable doubt.

## VI. CONCLUSION

For the reasons set forth above, as well as the reasons set forth in the Court's Decision and Order entered December 19, 2018 (Dkt. 1491), Defendants' post-verdict motions (Dkt. 1322; Dkt. 1325; Dkt. 1326) are denied in their entirety.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: January 4, 2019
Rochester, New York