UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DAVID PIRK,

        Petitioner,

    v.

UNITED STATES OF AMERICA,

        Respondent.

**DECISION AND ORDER**

1:15-CR-0142 EAW
1:23-CV-1052 EAW

## I.   INTRODUCTION

David Pirk ("Pirk" or "Petitioner") has filed a *pro se* motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence ("§ 2255 motion") (Dkt. 1976) and a motion to amend (Dkt. 2021).[1] For the reasons set forth below, the Court denies the motion to amend and dismisses the § 2255 motion.

## II.   BACKGROUND

### A.   Indictment, Trial, and Sentencing

On March 16, 2016, a federal grand jury returned a 46-count Second Superseding Indictment charging sixteen members of the Kingsmen Motorcycle Club ("KMC"), including Pirk, the National President of the KMC, with violations of the Racketeering

---

[1]     References to "Dkt." in this Decision and Order are to docket entries in Pirk's criminal action, *United States v. Pirk*, No. 1:15-CR-142 (W.D.N.Y.). References to "2d Cir. Dkt." are to docket entries in Pirk's appeal, *United States v. Jenkins*, Nos. 19-610-cr (L), 19-637-cr (Con), 19-2778-cr (Con) (2d Cir.). Unless otherwise indicated, citations to page numbers of pleadings are to the pagination automatically generated by CM/ECF and located in the header of each page.

Influenced and Corrupt Organizations ("RICO") statute, 18 U.S.C. §§ 1961-1968; the

Violent Crimes in Aid of Racketeering ("VICAR") statute, 18 U.S.C. § 1959; and narcotics

trafficking and firearms laws. (Dkt. 33). The Second Superseding Indictment alleged that

the KMC was a criminal enterprise and that Pirk and his co-defendants conducted the

affairs of the enterprise through a pattern of racketeering activity consisting of, *inter alia*,

murder, robbery, kidnapping, narcotics trafficking, and maintaining drug involved

premises. The eight counts naming Pirk, as renumbered in the jury instructions at trial,

were as follows:

- Count One: RICO conspiracy under 18 U.S.C. § 1962(d).

- Count Two: possession of a firearm in furtherance of a crime of violence in violation of 18 U.S.C §§ 924(c)(1)(A)(1) and 2.

- Counts Three and Four: murder as a violent crime in aid of racketeering under 18 U.S.C §§ 1959(a)(1) and 2, based on the allegation that on September 6, 2014, Pirk and Andre Jenkins a/k/a Little Bear ("Jenkins"), with intent to cause the death of another person, did knowingly, intentionally, and unlawfully cause the death of KMC members Paul Maue ("Maue") and Daniel "DJ" Szymanski ("Szymanski") in violation of P.L. §§ 125.25(1) and 20.00 for the purpose of advancing or maintaining their positions in a racketeering enterprise.

- Counts Five and Six: possession and discharge of a firearm in furtherance of a crime of a violence based on the allegation that Pirk and Jenkins "with malice aforethought did willfully, deliberately, maliciously and with premeditation," 18 U.S.C. §§ 1111 and 2, kill Maue and Szymanski by shooting them with a firearm in violation of 18 U.S.C §§ 924(c)(1)(A)(iii), 924(j); and 18 U.S.C. § 2.

- Count Eight: using and maintaining the South Buffalo KMC chapter clubhouse for the purpose of manufacturing, distributing, or using cocaine and marijuana in violation of 18 U.S.C. §§ 856(a)(1) and 2.

- Count Nine: possession of a firearm in furtherance of Count 8 in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2.

(Dkt. 33).

Pirk pleaded not guilty and proceeded to a joint jury trial with Jenkins and co-defendant Timothy Enix a/k/a Blaze ("Enix"). The undersigned presided over the jury trial which commenced with jury selection starting on January 16, 2018. (Dkt. 1004). Over four months later, on May 18, 2018, the jury returned a verdict convicting Pirk of all eight counts. (Dkt. 1258). Pirk was represented by William T. Easton, Esq. ("Mr. Easton") and Cheryl Myers Buth ("Ms. Myers Buth") (collectively, "defense counsel").

On February 28, 2019, the Court sentenced Pirk to an aggregate term of life imprisonment, plus two consecutive terms of life imprisonment, plus 120 months' imprisonment. (Dkt. 1580). Judgment was entered on May 7, 2019. (Dkt. 1587).

## B. Direct Appeal and Resentencing

Defense counsel continued to represent Pirk on his direct appeal. (Dkt. 1618). In his appellate brief (Dkt. 2032-4), Pirk argued: (1) the Court erroneously denied his motion to vacate pursuant to Federal Rule of Criminal Procedure 29, (2) the Court's jury instruction regarding interested witnesses was improper, (3) Pirk was improperly excluded from in-chambers conferences, (4) the Court erred in denying his motion to transfer venue to the Rochester division of the Western District of New York, (5) the RICO conspiracy in Count One was not a crime of violence for purposes of serving as a predicate for Count Two, (6) the evidence was legally insufficient to support the convictions, and (7) the sentences were multiplicitous and duplicitous.

Pirk's appeal was consolidated with the appeals of Jenkins and Enix. On August 5, 2022, the Second Circuit Court of Appeals issued a published decision and order addressing Pirk's challenge, joined by Enix, to this Court's jury instructions on interested witnesses. *United States v. Jenkins*, 43 F.4th 300 (2d Cir. 2022). The Circuit found that the instructions "did not assume the defendants' guilt or otherwise undermine the presumption of innocence and were thus not erroneous." *Id.* at 304.

In a concurrently filed summary order, the Circuit vacated Pirk's and Jenkins' convictions on Count Two for violations of 18 U.S.C. § 924(c) predicated on the RICO conspiracy in Count One. *United States v. Jenkins*, Nos. 19-610-cr (L), 19-637-cr (Con), 19-2778-cr (Con), 2022 WL 3138879, at *7 (2d Cir. Aug. 5, 2022). As the Circuit noted, the Government consented to vacatur of those convictions based on *United States v. Capers*, 20 F.4th 105, 120 (2d Cir. 2021), which held that RICO conspiracy is not categorically a crime of violence and thus cannot serve as a predicate for a conviction under 18 U.S.C. § 924(c). *Id.* The panel affirmed the remaining convictions of Pirk, Enix, and Jenkins. *Id.* at *2-7. Pirk's petition for a writ of *certiorari* was denied. *United States v. Jenkins*, 143 S. Ct. 533 (2022).

On December 13, 2022, Pirk appeared for resentencing. The Court imposed a term of life imprisonment on each of Counts One, Three, and Four, to be served concurrently with each other; 60 months' imprisonment on Count Nine, to run consecutively to all other counts; life imprisonment on each of Counts Five and Six, to run consecutively to all other counts; and 240 months' imprisonment on Count Eight, to run concurrently to Counts One,

Three, and Four.  (Dkt. 1969).  The amended judgment was entered on December 22, 2022.

(Dkt. 1972).  Pirk did not appeal his resentencing.[2]

### C.    The § 2255 Motion

Pirk filed his *pro se* § 2255 motion on September 28, 2023.  (Dkt. 1976).[3]  He also

filed a memorandum of law in support.  (Dkt. 1978).  Pirk seeks vacatur based on the

following allegations of ineffective assistance of counsel: (1) failure to research the

implications of *United States v. Davis*, 588 U.S. 445 (2019), as it pertained to Pirk's

liability under *Pinkerton v. United States*, 328 U.S. 640 (1946), for the murders of Maue

and Szymanski (Dkt. 1976 at 4, Dkt. 1978 at 1-15 (Ground One)); (2) failure to object

---

[2]    For purposes of the default start-date in the statute of limitations applicable to § 2255 motions, *see* 28 U.S.C. § 2255(f)(1), "an unappealed federal criminal judgment becomes final when the time for filing a direct appeal expires."  *Moshier v. United States*, 402 F.3d 116, 118 (2d Cir. 2005).  "[A criminal] defendant's notice of appeal must be filed in the district court within 14 days after . . . the entry of either the judgment or the order being appealed."  Fed. R. App. P. 4(b)(1)(A)(i).  Where, as here, a period is measured in days or longer units, the Court must "count every day, including intermediate Saturdays, Sundays, and legal holidays," Fed. R. Civ. P. 6(a)(1)(B), and must "include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."  Fed. R. Civ. P. 6(a)(1)(C). Accordingly, Pirk's conviction became final on Thursday, January 5, 2023, and the one-year limitations period expired on January 5, 2024.

[3]    Because Pirk is incarcerated and proceeding *pro se*, he is entitled to the benefit of the prison mailbox rule.  *See Moshier*, 402 F.3d at 117 (applying prison mailbox rule to motion to vacate under 28 U.S.C. § 2255).  "[I]n the absence of contrary evidence, district courts in this circuit have tended to assume that prisoners' papers were given to prison officials on the date of their signing."  *Hardy v. Conway*, 162 F. App'x 61, 62 (2d Cir. 2006) (collecting cases).  Here, Pirk signed the § 2255 motion but did not date it.  The only indication as to when it was mailed is the postmark of September 28, 2023, which is the date it is deemed filed.  *See Griffith v. Troy*, No. 919CV00354MADML, 2021 WL 4437584, at *4 (N.D.N.Y. Sept. 28, 2021) ("If the complaint is not signed, 'the date of the postmark is the date the petition is presumed filed.'" (quoting *Nolley v. Superintendent of Bare Hill*, No. 11-CV-6384, 2012 WL 2131891, at *5 (W.D.N.Y. June 12, 2012)).

when the prosecutor showed the jury certain guns that were seized from Pirk's residence following his arrest (Dkt. 1976 at 5; Dkt. 1978 at 15-17), failure to object to an improper comment during the prosecutor's summation (Dkt. 1978 at 17), failure to object to improper questioning by the prosecutor of Jimmy Ray Fritz and Paul Gilmore (*id.* at 17-18), and failure to object to the *Pinkerton* jury charge (*id.* at 18-19 (collectively denominated as Ground Two by Pirk)); failure to object to juror misconduct (Dkt. 1976 at 7; Dkt. 1978 at 19-20 (Ground Three)); and failure to challenge the *Pinkerton* jury charge on appeal (Dkt. 1976 at 8 (Ground Four)).

Pirk filed an undated and unsigned motion to amend his § 2255 motion which bears no postmark and was received by the Clerk of Court on July 9, 2024.[4] (Dkt. 2021). Pirk asserts the following new allegations of ineffective assistance of counsel: failure to investigate three possible eyewitnesses (Dkt. 2021 at 1-2 (Ground Five)); failure to impeach KMC member Thomas Koszuta regarding his description of a gun (*id.* at 2-3 (Ground Six)); failure to object to certain ballistics photos (*id.* at 3-4 (Ground Seven)); failure to object to KMC member Jospeh Michael Long's testimony that Pirk had possessed and sold cocaine (*id.* at 4 (Ground Eight)); inadequate preparation for the cross-

---

[4]    The Court deems the motion to amend filed on the day it was stamped received by the Clerk of Court. *See*, *e.g.*, *Grant v. Gonyea*, No. 19CV00743 (AJN) (DF), 2021 WL 8087868, at *9 & n.17 (S.D.N.Y. Oct. 21, 2021) (where state prisoner's reply was undated and postmark on mailing envelope was "not fully legible," district court deemed state prisoner's reply filed on or about the date it was "marked as received" by the court's *pro se* office and docketed), *adopted*, No. 19CV743AJNDCF, 2022 WL 1173341 (S.D.N.Y. Apr. 20, 2022).

examination of KMC member Emmett Green (*id.* (Ground Nine)); and failure to impeach KMC member Ryan Myrtle with a prior bad act (*id.* at 4-5 (Ground Ten)).

Respondent filed a response (Dkt. 2032) in opposition to the § 2255 motion and the motion to amend. Respondent also filed selected items from the trial and appellate records as exhibits to the response (Dkt. 2032-1 (Indictment, Dkt. 1235)), Dkt. 2032-2 (the Second Circuit's published decision), Dkt. 2032-3 (the Second Circuit's unpublished decision), Dkt. 2032-4 (Pirk's appellate brief), Dkt. 2032-5 (the Government's appellate brief), and Dkt. 2032-6 (selected pages from the trial transcript)).

## III.    SECTION 2255

"Under Section 2255 of Title 28, United States Code, a federal prisoner may move the sentencing court to vacate, set aside, or correct the sentence on the ground that such sentence was illegally imposed." *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) (citing 28 U.S.C. § 2255(a)). "Section 2255 provides relief in cases where the sentence: (1) was imposed in violation of the U.S. Constitution or the laws of the United States; or (2) was entered by a court without jurisdiction to impose the sentence; or (3) exceeded the maximum detention authorized by law; or (4) is otherwise subject to collateral attack." *Adams v. United States*, 372 F.3d 132, 134 (2d Cir. 2004) (citing 28 U.S.C. § 2255).

The petitioner bears the burden of proving that he is entitled to relief by a preponderance of the evidence. *See Napoli v. United* States, 45 F.3d 680, 683 (2d Cir. 1995). "[A] district court need not assume the credibility of factual assertions . . . where the assertions are contradicted by the record in the underlying proceeding." *Puglisi*, 586 F.3d at 214.

While the statute provides that hearing must be held "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," 28 U.S.C. § 2255(b), it "does not imply that there must be a hearing where the allegations are 'vague, conclusory, or palpably incredible,'" *Gonzalez v. United States*, 722 F.3d 118, 130-31 (2d Cir. 2013) (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)), as many of Pirk's allegations are here. The Court finds that the trial and appellate record and the combined submissions of the parties provide a sufficient basis upon which to deny Pirk's § 2255 motion. Therefore, it is unnecessary to supplement the record by holding an evidentiary hearing or obtaining affidavits from defense counsel.

## IV.     **DISCUSSION**

### A.     **The Motion to Amend**

The Second Circuit has applied Federal Rule of Civil Procedure 15 ("Rule 15") to motions to amend petitions under 28 U.S.C. § 2254 and motions to amend § 2255 motions. *See Ching v. United States*, 298 F.3d 174, 177 (2d Cir. 2002) (§ 2255 motion) (citing, *inter alia*, *Littlejohn v. Artuz*, 271 F.3d 360, 362 (2d Cir. 2001) (§ 2254 petition)); *see generally Jackson v. Albany Appeal Bureau Unit*, 442 F.3d 51, 54 n.2 (2d Cir. 2006) ("Since § 2254 and 28 U.S.C. § 2255 'are generally seen as in *pari materia*,' the reasoning of cases in the context of § 2254 petitions applies equally to § 2255 petitions." (quoting *Kellogg v. Strack*, 269 F.3d 100, 103 n.3 (2d Cir. 2001); further citation omitted)).

Rule 15(a) instructs that "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). While "amendment should normally be permitted," *Nerney v. Valente & Sons Repair Shop*, 66 F.3d 25, 28–29 (2d Cir. 1995) (citing *Foman v. Davis*, 371 U.S. 178,

182 (1962)), "[u]ndue delay and futility of the amendment, among other factors, are reasons to deny leave." *Id.* (quoting *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994)). Courts in this Circuit have denied leave to amend as futile when the proposed new claims were untimely, *Soler v. United States*, No. 05 CRIM. 165 RJH, 2010 WL 4456343, at *3-5 (S.D.N.Y. Oct. 18, 2010); subject to an unexcused procedural default, *Dominguez v. United States*, No. 04 CIV. 293, 2005 WL 1153767, at *4 (S.D.N.Y. May 12, 2005); or meritless, *Santiago-Ortiz v. United States*, No. 17-CR-0149 (LAK), 2023 WL 3740228, at *3 (S.D.N.Y. May 31, 2023).

Although the one-year statute of limitations applicable to § 2255 motions expired prior to the filing of the motion to amend, *see* note 2, *supra*, Respondent does not raise untimeliness as a basis to deny it. Instead, Respondent argues that to the extent the proposed new ineffectiveness allegations are based on purported trial-level errors by counsel, they are procedurally defaulted because Pirk could have raised them on direct appeal.

However, Respondent fails to acknowledge the well-settled rule that "'an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255'—with no requirement that 'the petitioner show[] cause and prejudice' or actual innocence——irrespective of 'whether or not the petitioner *could have* raised the [ineffectiveness] claim on direct appeal.'" *Williams v. United States*, No. 14-CR-784 (RJS), 2022 WL 903001, at *10 (S.D.N.Y. Mar. 28, 2022) (emphasis and first bracket in original) (quoting *Massaro v. United States*, 538 U.S. 500, 503-04 (2003)); *see also Smith v. United States*, No. 21 CR 802 (VB), 2026 WL 836705, at *4 (S.D.N.Y. Mar. 26, 2026)

("[W]ith the exception of Smith's claim of ineffective assistance of counsel, Smith has procedurally defaulted on all of his amended claims by failing to advance them in a direct appeal." (citing, *inter alia*, *Massaro,* 538 U.S. at 509 ("Failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255."))). Thus, procedural default is not a basis to deny permission to add the new ineffectiveness allegations or, for that matter, to reject the ineffectiveness allegations in the original § 2255 motion.

Respondent alternatively argues that the proposed new ineffectiveness allegations are meritless and therefore amendment would be futile. On that point, the Court agrees. As discussed below, none of Pirk's new allegations of ineffective assistance warrant habeas relief under § 2255. Accordingly, Pirk's motion for leave to amend (Dkt. 2021) is denied.

**B.    Pirk Has Failed to Demonstrate Ineffective Assistance of Counsel**

To succeed on a claim that counsel did not provide constitutionally effective assistance, the petitioner must "demonstrate both (1) that counsel's performance was so unreasonable under prevailing professional norms that 'counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment,' *Strickland v. Washington*, 466 U.S. 668, 687 (1984); and (2) that counsel's ineffectiveness prejudiced the [petitioner] such that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,'" *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004) (quoting *Strickland*, 466 U.S. at 694; citations omitted).

When assessing an attorney's performance, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional

- 10 -

assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 90, 101 (1955)).  In evaluating prejudice, it is "not enough" for the Court to find "that the errors had some conceivable effect on the outcome of the proceeding[,]" "since "[v]irtually every act or omission of counsel would meet that test[.]" *Id.* at 693 (citation omitted).  Rather, the error must have been so serious as to "undermine confidence in the outcome." *Id.* at 694.  The failure to meet either the performance prong or the prejudice prong is fatal to an ineffectiveness claim.  *See Strickland*, 466 U.S. at 697.  The Court examines both the original and proposed allegations of defense counsel's ineffective assistance in turn below.

### 1.    Failure to Raise *Davis*-Related Objections and Arguments (Ground One)

In Ground One (Dkt. 1976 at 4, Dkt. 1978 at 1-15), Pirk faults Mr. Easton "for failing to research the holding" of *Davis* and argue that "the residual clause of 18 U.S.C. § 924(c) was unconstitutional, as applied to . . . Counts 1, 3, 4, 5, and 6." (Dkt. 1978 at 1; *see also* Dkt. 1976 at 4).  As noted above, Count One charged RICO conspiracy; Counts Three and Four charged commission of a violent crime in aid of racketeering, namely, the murders of Maue and Szymanski, respectively; and Counts Five and Six charged possession and discharge of a firearm in furtherance of a crime of violence, again with regard to the murders of Maue and Szymanski, respectively.  Pirk also claims that Mr. Easton failed to research *Davis* "as it p[er]tained to the 'Accessorial Liability' for the intentional murders of" Maue and Szymanski." (Dkt. 1978 at 4).  According to Pirk, "the

- 11 -

*Davis* holding invalidates the enhanced sentences imposed upon him" under § 924(c). (*Id.*).  Pirk further argues that there is no "[valid] post[-]*Davis* predicate upon which the jury based its § 924(c) findings" "because the government requested and received a *Pinkerton* instruction."[5]  (*Id.* at 7 (first brackets in original)).

In resolving Pirk's complaints of ineffective assistance, a brief overview of the legal landscape regarding 18 U.S.C. § 924(c) before and after *Davis* will be helpful.  Title 18 U.S.C., Section 924(c) prescribes mandatory minimum criminal penalties for using or carrying a firearm "during and in relation to any crime of violence," *id.* § 924(c)(1)(A), as charged in Counts Five and Six.  At the time of Pirk's trial, § 924(c) in turn defined a "crime of violence" in two clauses.  First, the "elements clause"—which remains valid to this day—defines a crime of violence as any felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another."  *Id.* § 924(c)(3)(A).  Second, the "residual clause" defined such a crime as any felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  *Id.* § 924(c)(3)(B).

---

[5]     "A *Pinkerton* charge 'informs the jury that it may find a defendant guilty of a substantive offense that he did not personally commit if it was committed by a coconspirator in furtherance of the conspiracy, and if commission of that offense was a reasonably foreseeable consequence of the conspiratorial agreement.'"  *United States v. Gershman*, 31 F.4th 80, 99 (2d Cir. 2022) (quoting *United States v. McCoy*, 995 F.3d 32, 63 (2d Cir. 2021), *vacated on other grounds sub nom. McCoy v. United States*, 142 S. Ct. 2863 (2022)).

In 2015, the Supreme Court determined that the "residual clause" for defining a crime of violence in the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii), was unconstitutionally vague. *Johnson v. United States*, 576 U.S. 591, 606 (2015). The residual clause at issue in *Johnson* was similarly worded to § 924(c)'s residual clause, 18 U.S.C. § 924(c)(3)(B).

Four years later, relying on its reasoning in *Johnson*, the Supreme Court held in *Davis* that 18 U.S.C. § 924(c)(3)(B) was "unconstitutionally vague." *Barnes v. United States*, 162 F.4th 58, 61 (2d Cir. 2025) (citing *Davis*, 588 U.S. at 470). "After *Davis*, which invalidated the residual clause, 588 U.S. at 470, a Section 924(c) conviction remains valid only if it rests on a predicate offense captured by the elements clause." *United States v. Ocasio*, No. 20 CIV. 9733 (JPC), 2024 WL 2925191, at *9 (S.D.N.Y. June 10, 2024) (citing *Stone v. United States*, 37 F.4th 825, 831 (2d Cir. 2022)), *appeal dismissed* (Nov. 14, 2024); *see also Elliott v. United States*, No. 17-CR-128 (ARR), 2019 WL 6467718, at *2 (E.D.N.Y. Dec. 2, 2019) ("*Davis* prohibits a § 924(c)(1)(A) conviction if the purported underlying 'crime of violence' meets that definition solely by reference to the residual clause."), *recons. denied*, 2020 WL 127640 (E.D.N.Y. Jan. 10, 2020).

### a.    Failure to Predict *Davis* and Object at Trial

While Pirk acknowledges that *Davis*, decided on June 24, 2019, post-dates the jury verdict in his case (Dkt. 1978 at 12-13), he nonetheless implies that Mr. Easton should have anticipated *Davis*'s holding. It is well-settled that an attorney is not required to predict future changes in the law relevant to a defendant's criminal proceeding. *See United States v. Kimber*, 777 F.3d 553, 563 (2d Cir. 2015) ("[A]n attorney is not required to forecast

changes or advances in the law in order to provide effective assistance.") (internal quotation marks omitted); *Harrington v. United States*, 689 F.3d 124, 131 (2d Cir. 2012) ("[C]ounsel cannot be deemed constitutionally ineffective for failing to anticipate later Supreme Court rulings.").

"In fact, a year before *Davis* the Second Circuit distinguished § 924(c)(3)[(B)] from the residual clause in *Johnson* on the grounds that the former did not concern prior convictions but rather 'crimes of pending prosecution.'" *Mizell v. United States*, No. 14-CR-0212 (RJS), 2020 WL 2216561, at *4 (S.D.N.Y. May 6, 2020) (quoting *United States v. Barrett*, 903 F.3d 166, 182 (2d Cir. 2018), *cert. granted*, *judgment vacated*, 139 S. Ct. 2774 (2019), *abrogated by Davis*, 588 U.S. 445). "The Second Circuit emphasized that 'a conduct-specific identification of a predicate offense as a crime of violence can be made without raising either of the constitutional concerns that have informed the Supreme Court's categorical-approach jurisprudence.'" *Id.* (quoting *Barrett*, 903 F.3d at 183). "Accordingly, even if it could be argued that *Johnson* provided all 'the tools to construct' a constitutional vagueness challenge to § 924(c)(3)," *id.* (quoting *Engle v. Isaac*, 456 U.S. 107, 133 (1982)), "the outcome of *Davis* was not so obvious that it was objectively unreasonable for counsel to rely on then-binding Second Circuit precedent," *id.* (citing *Elliott*, 2019 WL 6467718, at *5 (declining to find counsel ineffective for failing to anticipate "that § 924(c)'s residual clause was unconstitutional because the U.S. Supreme Court had not yet decided *Davis*" and "[t]he residual clause was also not unconstitutional under this circuit's case law")). Pirk has not demonstrated that Mr. Easton was constitutionally ineffective by failing to forecast the Supreme Court's *Davis* ruling.

- 14 -

### b.   Failure to Raise *Davis*-Related Arguments on Appeal

Pirk also contends that Mr. Easton should have supplemented his appellate brief to argue that, after *Davis*, the VICAR murder convictions under Counts Three and Four no longer qualify as predicate offenses for purposes of § 924(c).  (*See* Dkt. 1978 at 9-15).  Pirk asserts that Mr. Easton failed to argue that (1) the jury may have concluded that Pirk used or possessed a gun in connection with the evidence that Pirk and Jenkins intended to cause harm to, or the death of, KMC members Filip Caruso ("Caruso") and Edgar Dekay II ("Dekay"), or that the § 924(c) convictions rested on the jury's factual findings regarding the RICO conspiracy charged in Count One; (2) *Davis* precludes using a conviction based on a theory of *Pinkerton* liability as a § 924(c) predicate; and (3) the substantive offense charged Counts Three and Four—second-degree (intentional) murder under P.L. § 125.25(1) as either a principal or an accomplice, P.L. § 20.00—is not categorically a crime a violence because the use of physical force (actual, attempted, or threatened) is not a necessary element of the crime.

The Second Circuit has considered and rejected the arguments that Pirk claims were wrongly omitted from his appellate brief.  *See*, *e.g.*, *Gomez v. United States*, 87 F.4th 100 (2d Cir. 2023); *Stone*, 37 F.4th at 831-32.  In *Gomez*, the petitioner moved to vacate his sentence for the use or carrying of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c).  The district court had denied the § 2255 motion, finding that the § 924(c) conviction rested on the valid predicate crime of intentional murder under New York State law, P.L. § 125.25(1); and that the *Pinkerton* jury instruction did not undermine the validity of the substantive murder predicate as a crime of violence.  However, because

the Second Circuit had not yet considered the issue, the district court granted a certificate of appealability as to whether the jury instruction on *Pinkerton* liability affected the validity of a predicate conviction for purposes of 18 U.S.C § 924(c).  *Gomez*, 87 F.4th at 104.

On appeal, Gomez argued that his § 924(c) conviction—predicated on the murder of, and the conspiracy to murder, the victim—had to be vacated because "there [was] no way to know from the jury's general verdict whether it found [him] guilty of the [§] 924(c) count by virtue of the [now-invalid] conspiracy to murder racketeering act, or by virtue of the substantive murder racketeering act." *Id.* at 109 (third and fourth alterations in original; citation to record omitted).  The Second Circuit disagreed, explaining that "[t]he jury returned a verdict indicating that it found that both the murder of and the conspiracy to murder [the victim] had been proven beyond a reasonable doubt." *Id.*

Similarly, the jury here returned a verdict finding Pirk guilty of both the VICAR murders of Maue and Szymanski (Counts Three and Four) (Dkt. 1258 at 9), and the conspiracy to murder Maue and Szymanski (Count One) (*id.* at 1).  The verdict sheet clearly denominated Count Three as "Murder in Aid of Racketeering — Paul Maue" and Count Four as "Murder in Aid of Racketeering — Daniel "DJ" Syzmanski". (*Id.* at 9).  There is no factual basis in the record for Pirk to assert that the jury may have concluded that he was guilty of Counts Three and Four because he used or possessed a gun in connection with the evidence that he and Jenkins intended to harm or kill Caruso and Dekay.  Instead, the verdict sheet reflects that the jury found Pirk guilty beyond a reasonable doubt of the VICAR murders of Maue and Szymanski.

Pirk alternatively contends that the § 924(c) convictions in Counts Five and Six rested on the additional factual findings the jurors were asked to make in connection with the verdict on Count One. In particular, after finding Pirk guilty of RICO conspiracy as charged in Count One, the jury "further unanimously f[ou]nd" that Pirk, "as part of the racketeering conspiracy, committed, or aided, abetted, counseled, commanded, induced, or procured, the September 6, 2014, murder[s]" of Maue and Szymanski, "in violation of New York law as defined by the jury instructions." (Dkt. 1258 at 1). This argument finds no support in the record. The Court specifically instructed the jury that:

> Counts 5 and 6 of the indictment charge defendants David Pirk and Andre Jenkins with using and carrying a firearm to commit and possessing a firearm in furtherance of a crime of violence, namely the VICAR counts charged in Counts 3 and 4, and causing the death of a person through the use of a firearm.

(A: 18549[6] (2d Cir. Dkt. 242); *see also* A: 18549-56 (2d Cir. Dkt. 242 (complete instructions on Counts Five and Six))). Based on the Court's instructions, there could have been no confusion in the jurors' minds that their findings as to Counts Five and Six had to be premised solely on their findings as to Counts Three and Four. The only § 924(c) conviction that relied on a RICO conspiracy was Count Two, which was vacated with the Government's consent on direct appeal. *Jenkins*, 2022 WL 3138879, at *7. Accordingly, there is no basis for finding that Counts Five and Six rest on a now-invalid predicate crime of violence. *See United States v. Ocasio*, No. 20 CIV. 9733 (JPC), 2024 WL 2925191, at *11 (S.D.N.Y. June 10, 2024) ("Given that the jury necessarily found Ocasio guilty of the

---

[6]     Citations to "A:" refer to the Bates numbers stamped at the top center of each page of the joint appellate appendices filed in Pirk's appeal to the Second Circuit.

intentional murders of Brown, Robert Antonetti, and Axel Antonetti, as reflected by his VICAR convictions for those murders . . . , Ocasio's Section 924(c) convictions remain valid."), *appeal dismissed* (Nov. 14, 2024).

The Court also is not persuaded by Pirk's argument that the VICAR murder convictions on Counts Three and Four are not valid § 924(c) predicates because they may have rested on aiding-and-abetting theories of culpability (*e.g.*, *Pinkerton* and New York's accomplice liability statute, P.L. § 20.00). "Because under a *Pinkerton* theory the defendant is convicted of the substantive offense—not of conspiring to commit the offense—he has committed a crime of violence if the substantive offense is a crime of violence." *Gomez*, 87 F.4th at 109. "For this reason, every circuit to address the issue has held that *Pinkerton* liability for a crime of violence can support a § 924(c) conviction." *Id.* at 109-10 (collecting sister circuit authority); *see also id.* at 110 (citing its prior summary orders reaching same conclusion, *e.g.*, *United States v. Blanco*, 811 F. App'x 696, 701 n.2 (2d Cir. 2020) (stating that *Pinkerton* liability does not "somehow transform [a] conviction for substantive bank robbery into one for bank robbery conspiracy, implicating the residual-clause concerns explored in *Davis*"). The Second Circuit noted it also had reached "the closely related conclusion that aiding and abetting a crime of violence suffices for a § 924(c) conviction." *Id.* at 110 (citing *McCoy*, 995 F.3d at 58 ("If the underlying offense is a crime of violence, it is a predicate for § 924(c) liability; if the defendant aided and abetted that underlying offense, he is guilty of the underlying offense," and has been "convicted of crimes that are proper predicates for § 924(c) liability.")).

- 18 -

The Second Circuit concluded that "[e]ven if the jury found Gomez guilty of murder based on a *Pinkerton* theory, Gomez's § 924(c) conviction would remain valid because the acts of his co-conspirators are imputed to him[,]" *id.* at 110 (citing *Pinkerton*, 328 U.S. at 646 ("It is settled that an overt act of one partner may be the act of all.") (internal quotation marks omitted in original)). This "mean[t] that the jury necessarily found that Gomez committed each element of the substantive offense of intentional murder under New York law." *Id.*; *see also Sessa v. United States*, No. 20-2691, 2022 WL 1179901, at *2 (2d Cir. Apr. 21, 2022) ("A conviction under *Pinkerton* or an aiding-and-abetting theory simply does not transform a substantive crime of murder into a murder conspiracy."); *Ocasio*, 2024 WL 2925191, at *12 ("[I]n the context of Section 924(c), it makes no difference whether the jury found Ocasio guilty of the intentional murders of [the victims] as an aider and abettor or as a principal. Under either theory of liability, each of Ocasio's Section 924(c) convictions rested on the valid predicate offense of intentional murder in the second degree."). In sum, *Davis* did not affect the predicate convictions for intentional murder, regardless of whether Pirk's guilt was based on a *Pinkerton* theory or aider-and-abettor liability. Thus, *Davis* had no impact on Pirk's remaining § 924(c) convictions.

Finally, there is no merit to Pirk's argument that the use of physical force (actual, attempted, or threatened) is not a necessary element of second-degree (intentional) murder under P.L. § 125.25(1). P.L. § 125.25(1)) provides that a "person is guilty of murder in the second degree when . . . [w]ith intent to cause the death of another person, he causes the death of such person or of a third person." *Id.* "Second-degree murder under New York law is categorically a crime of violence because the 'knowing or intentional causation of

- 19 -

bodily injury necessarily involves the use of physical force.'"  *Gomez*, 87 F.4th at 111

(quoting *United States v. Castleman*, 572 U.S. 157, 169 (2014); citing *United States v.*

*Scott*, 990 F.3d 94, 100 (2d Cir. 2021) (explaining that it would be "illogical" to conclude

that second-degree murder under P.L. § 125.25(1) was not "a categorically violent

crime")); *see also Stone*, 37 F.4th at 833 (holding that in New York, "second-degree murder

[under P.L. § 125.25(1)] is categorically a crime of violence under § 924(c)").

Even if the jury found that Pirk committed second-degree murder as defined in P.L.

§ 125.25(1) as an accomplice as defined in P.L. § 20.00, the law deems an accomplice to

have committed the acts of the principal and the acts of his co-conspirators.  *See Gomez*,

87 F.4th at 110 ("[T]he law imputes the acts of the principal to an aider and abettor.").

Likewise, even if the jury found that Pirk committed second-degree murder as defined in

P.L. § 125.25(1) under a *Pinkerton* theory of liability, the law deems a member of a

conspiracy to have committed the acts of his co-conspirators.  *Id.* at 110.  Because P.L.

§ 125.25(1) is a crime of violence, Pirk's VICAR murder convictions (Counts Three and

Four) are for crimes of violence, and his § 924(c) convictions (Counts Five and Six) rest

on valid predicate crimes of violence.[7]

---

[7]    Pirk's reliance on *United States v. Begay*, 934 F.3d 1033, 1038 (9th Cir. 2019), is
unavailing.  That case involved second-degree murder under an entirely different statute,
18 U.S.C. § 1111(a) (defining "murder" as "the unlawful killing of a human being with
malice aforethought").  Moreover, it was superseded on rehearing by *United States v.
Begay*, 33 F.4th 1081, 1096 (9th Cir. 2022), wherein the Ninth Circuit held that 18 U.S.C.
§ 1111(a) does qualify as a crime of violence pursuant to the elements clause of
§ 924(c)(3).

Given the state of the law discussed above, Pirk has not shown that Mr. Easton performed in a professionally unreasonable manner by declining to make the objections and arguments based on *Davis* that Pirk wished he had raised.  Furthermore, Pirk has not established that the omitted objections and arguments, had they been made, had a reasonable probability of changing the outcome of his trial or appeal.

### 2. Failure to Object at Trial and Raise Arguments on Appeal (Ground Two)

Under the heading for Ground Two, Pirk asserts four different allegations of ineffectiveness on Mr. Easton's part.  The Court discusses them in turn below.

### a. Failure to Object to Firearms Evidence

Pirk claims that Mr. Easton erroneously failed to object when the prosecution "showed multiple guns to the jury and explicitly told [them] that the guns were illegal." (Dkt. 1978 at 17).  Pirk has provided no citations to the trial transcript in support of this contention.  Furthermore, he has failed to articulate the legal basis on which defense counsel should have objected to this evidence.  Pirk's allegation regarding the firearms evidence "relies on pure speculation and, as such, does not suffice to show deficient performance by counsel, or the reasonable probability of a different result."  *Scott v. Racette*, No. 1:15-CV-00043-MAT, 2018 WL 451825, at *9 (W.D.N.Y. Jan. 17, 2018); *see also*, *e.g.*, *Carter v. McKoy*, No. 09cv1030 NRB, 2010 WL 3290989, at *7 (S.D.N.Y. Aug. 9, 2010) (stating that "[v]ague and conclusory allegations are not sufficient to demonstrate either that counsel was ineffective or that the petitioner suffered actual prejudice"); *Kemp v. New York*, No. 07cv6996 (RMB) (HBP), 2009 WL 306258, at *14

(S.D.N.Y. Feb. 9, 2009) ("Vague and speculative allegations such as these are insufficient to establish the prejudice required by *Strickland*.").

### b.      Failure to Object to Prosecutorial Misconduct

Pirk asserts that Mr. Easton "failed to object to the prosecutor[] telling the jury that he had only one chance to put the Petitioner away, and that the Petitioner had several chances to get out." (Dkt. 1978 at). Pirk claims that despite his specific request, defense counsel did not object and later failed to raise a prosecutorial misconduct claim based on this statement on direct appeal. (*Id.*). Pirk provides no citation for the challenged remark. Respondent states that it has reviewed the transcript of the summation but can find no such statement. (Dkt. 2032 at 17-18). Pirk argues that this "improper statement to the jury prejudiced the Petitioner as it invited the jury to convict the Petitioner for reasons other th[a]n the evidence." (*Id.* (brackets omitted)).

"In order to obtain reversal of a conviction on the ground that the prosecutor has crossed the boundary between permissible and impermissible argument, a defendant must show that the improper argument caused him substantial prejudice." *United States v. Parker*, 903 F.2d 91, 98 (2d Cir. 1990) (collecting cases). "In determining whether the defendant has suffered such prejudice, [the Court] consider[s] the seriousness of the misconduct, the measures adopted by the trial court to cure the misconduct, and the certainty of conviction absent the improper statements." *Id.* (collecting cases).

The record does not appear to support Pirk's contention about this comment being made. But even if it did, it would not justify habeas relief. The comment appears to be a variation on the "safe streets" theme—a suggestion that Pirk "was so dangerous he must

be [convicted] to protect public safety," *United States v. Smith*, 629 F. App'x 135, 136-37 (2d Cir. 2015). "Although the Second Circuit has disapproved of the use of so-called 'safe streets' arguments in which a prosecutor contends that a guilty verdict would relieve community fears," *Gerena v. New York State Off. of Mental Health*, No. 11-CV-4450 (KAM), 2018 WL 11466739, at *7 (E.D.N.Y. Feb. 27, 2018) (citing *United States v. Locascio*, 6 F.3d 924, 946 (2d Cir. 1993)), it has affirmed convictions in circumstances where the prosecutor's argument more obviously sought to play on the jurors' fears than the alleged comment in this case, *see Locascio*, 6 F.3d at 946 (affirming conviction where the Government stated, "'If you accept the proof of what you are dealing with here, the boss of a murderous and treacherous crime family and his underboss, you would be less than human, if you didn't feel some personal concern'"); *Smith*, 629 F. App'x at 136 (affirming conviction where "'the Government argued that the timing of [the defendant's] arrest was designed to protect 'the safety of the citizens of New York—and New Paltz'")). At best, even if made, the challenged remark was not particularly severe and it was an isolated incident in a lengthy and otherwise uneventful summation.

Moreover, any potential prejudice from the alleged comment would have been mitigated by the Court's jury instructions. For instance, the Court thoroughly instructed the jurors that the arguments of counsel were not evidence:

> Now, during their summations, the attorneys have suggested to you certain inferences and conclusions that you might reasonably and logically draw from the evidence. The summations of counsel are, of course, not evidence. However, if the arguments of counsel strike you as reasonable and logical and supported by the evidence, you may, if you so conclude, adopt them. On the other hand, if you find such arguments to be unreasonable or illogical or unsupported by the evidence, you may, if you so conclude, reject them. In

the last analysis, ladies and gentlemen, it is your function as the jury to draw your own inferences and conclusions from the evidence as you recollect the evidence and as you find such evidence credible and believable. Keep in mind that you as the jury are the sole and exclusive judges of the facts. It is your duty to decide each and every issue of fact which has arisen during the course of the trial. No one, not counsel, not the Court may presume to tell you how the issues of fact should be decided. I repeat, that you and you alone are the sole and exclusive judges of the facts.

(A: 18393-94, 2d Cir. Dkt. 242).

The Court further instructed the jurors not to factor their own emotions into their deliberations:

Likewise, in reaching your verdict, you are not to be affected by sympathy, bias or prejudice. Nor must you let any personal feelings concerning the nature of the crimes charged interfere with your decision-making process. Further, you must not be influenced by what you might believe the reaction to your verdict will be, whether it will please or displease anyone, be popular or unpopular, or, indeed, any consideration outside of the case as it has been presented to you in this courtroom. You should consider only the evidence, both the testimony and exhibits, as well as any stipulations, find the facts from what you consider to be the believable evidence, and apply the law as I have given it to you to those facts. Your verdict will be determined by the conclusions thus reached.

(A: 18575, 2d Cir. Dkt. 242).

Finally, the Government's proof was so substantial and compelling that, regardless of whether the challenged comment was made, there is no reasonable possibility that the jury would not have convicted Pirk. Pirk has not demonstrated that Mr. Easton's failure to object to the purported comment was professionally unreasonable or resulted in prejudice to his defense.

- 24 -

### c.    Failure to Object to Improper Questions

Pirk contends that Mr. Easton erred by failing to object during the prosecutor's questioning of Jimmy Ray Fritz ("Fritz") and Paul Gilmore ("Gilmore"). According to Pirk, after Fritz and Gilmore each testified that Pirk always told them to tell the truth when speaking with law enforcement, the prosecutor asked each of them, "[D]idn't it mean for you to lie[?]" (Dkt. 1078 at 17-18). Pirk complains that Mr. Easton did not object either time the prosecutor asked this question. (*Id.* at 18). However, Pirk has not provided a citation for these alleged questions and answers, and Respondent could not locate them in the transcript. (Dkt. 2032 at 17). Respondent notes that when Mr. Easton cross-examined Gilmore, he elicited that Pirk "essentially said tell the truth, but don't volunteer information and practice how to testify." (A: 6871-72 (Dkt. 1032-6)).

The decision whether to object and on what basis generally "involves a strategic choice, which is 'virtually unchallengeable,'" *Gaskin*, 364 F.3d at 468 (quoting *Strickland*, 466 U.S. at 690-91); *see also United States v. Luciano*, 158 F.3d 665, 660 (2d Cir. 1998) (noting that appellate courts are "ill-suited to second-guess" strategic decisions by trial counsel "unless there is no strategic or tactical justification for the course taken"). Pirk has failed to articulate why these lines of questioning were improper or the legal basis for the objection Mr. Easton should have made. Pirk cannot show professionally unreasonable performance or a reasonable probability of a different result based on mere speculation and conjecture. *See, e.g.*, *Carter*, 2010 WL 3290989, at *7 (stating that "[v]ague and conclusory allegations are not sufficient to demonstrate either that counsel was ineffective or that the petitioner suffered actual prejudice"); *Kemp*, 2009 WL 306258, at *14 ("Vague

and speculative allegations such as these are insufficient to establish the prejudice required by *Strickland*.").   Moreover, Pirk has not overcome the strong presumption of reasonableness accorded to Mr. Easton's decision to counter any adverse inference created by the prosecutor's question through cross-examination rather than an objection.

### 3.   Failure to Object to Juror Misconduct (Ground Three)

Pirk argues that Mr. Easton was ineffective for "not objecting to a juror who read a frontpage news article" that referenced a co-defendant's state case.  (Dkt. 1976 at 7; Dkt. 1978 at 19-20).  Pirk has not provided a citation to the trial transcript regarding this alleged incident.  As Respondent notes, Pirk presumably is referring to the situation that occurred on March 6, 2018.  (Dkt. 2032-6 (citing A: 6654-55)).  Before the proceeding commenced, the Court asked the jurors if they had seen or heard anything about the trial.  (A: 6654 (Dkt. 2032-6)).  Jurors 4, 5, 6, and 16 all indicated they had seen some media coverage of the case.  (A: 6655 (Dkt. 2032-6)).  The Court questioned each juror separately.  (A: 6655-56 (Dkt. 2032-6)).  Jurors 5, 6, and 16 had avoided reading or listening to the substance of the media coverage and thus presented no concerns.

Juror 4, however, admitted that she had "read the first paragraph" of an article in the Sunday, March 4, 2018 edition of the <u>Buffalo News</u> titled, "Testimony offers look inside a Kingsmen clubhouse."  (A: 6655, 6657-58 (Dkt. 2032-6)).  Juror 4 said she realized she was "not supposed to be doing this," and she took the paper out to the recycling bin.  (A: 6655 (Dkt. 2032-6)).  Juror 4 did not discuss what she had read with any of the other jurors, promised the Court she was not going to consider anything she had seen or read in the

paper when deliberating, and said she would have "no problem" being fair and impartial. (A: 6656-57 (Dkt. 2032-6)).

Mr. Easton then voiced "concern" that Juror 4, "after reading the headline [of the] article, . . . said she 'fought like hell' not to read the paper," but "that she succumbed to temptation and read the first paragraph." (A: 6659 (Dkt. 2032-6)). Mr. Easton stated that Juror 4's "concession that she read the first paragraph, despite all of the admonitions the Court gave, gives [the defense] great concern." (*Id.*).

Under further questioning by the Court, Juror 4 responded that she did not remember what the headline said, that she only read the "[f]irst couple of sentences" of the article, and that she did not remember "anything" about what she had read. (A: 6661 (Dkt. 2032-6)). After expressing concern about Juror 4's disregard of the previous instructions regarding media coverage, the Court made it crystal clear to Juror 4 that, going forward, she "need[ed] to stay away from the Buffalo News." (A: 6662 (Dkt. 2032-6)). Juror 4 confirmed that she would be able to do that, explaining that she would have a family member scan the paper before she read it and, if there was anything regarding the trial, the family member would put the paper in the recycling bin. (A: 6663 (Dkt. 2032-6)).

Contrary to Pirk's claim in this petition, Mr. Easton did, in fact, express "concern" over the juror's exposure to the article. (A: 6659 (Dkt. 2032-6)). Moreover, Mr. Easton argued that Juror 4 had demonstrated she was disqualified from serving because, "despite being admonished repeatedly and forcefully over the course of weeks," she began reading an article concerning the trial. (A: 6677 (Dkt. 2032-6)). Mr. Easton requested that Juror 4 be discharged on that basis. (*Id.*). However, the Court denied Mr. Easton's motion to

- 27 -

discharge Juror 4 (A: 6679 (Dkt. 2032-6)), after carefully explaining its reasons for "having confidence" that if Juror 4 was exposed to anything further about the case, she'll be honest and let us know that" (A: 6679-80 (Dkt. 2032-6)).  As the Court noted, "there was nothing on the first page of the section of 15 that was . . . prejudicial or wasn't just repeating everything that had been discussed here."  (A: 6679 (Dkt. 2032-6)).  Accordingly, Pirk's complaint that Mr. Easton failed to object to Juror 4's continued service is factually incorrect and meritless.

### 4. Failure to Challenge the *Pinkerton* Jury Instruction (Ground Four)

Pirk asserts that Mr. Easton unreasonably failed to object to the *Pinkerton* jury instruction at trial (*see* Dkt. 1978 at 18-19 (arguing that the prosecution failed to show entitlement to the *Pinkerton* instruction because it failed prove that Pirk shared Jenkins's intent to kill Maue and Szymanski or that Pirk engaged in any acts to effectuate or advance the commission of these homicides)), or argue on appeal that *Davis* "disqualif[ies] jury verdicts of substantive guilt based on the *Pinkerton* theory of liability" (Dkt. 1976 at 8).

Contrary to Pirk's first contention, defense counsel did object to the Court's issuance of a *Pinkerton* instruction.  (*See* A: 19732 (Ms. Myers Buth stated, "Judge, we join in [co-defendant's objection] and object to the *Pinkerton* instruction in its entirety for the record.") (2d Cir. Dkt. 240)).

As for Pirk's second argument, the Court already has rejected Pirk's arguments in Ground One that Mr. Easton was ineffective for failing to raise *Davis*-related challenges to *Pinkerton* liability.  The Court notes Pirk's phrasing of the claim in Ground Four appears

to be drawn from *United States v. Rodriguez*, No. 94-CR-313, 2020 WL 1878112 (S.D.N.Y. Apr. 15, 2020), which has effectively been abrogated by *Gomez*.  In *Rodriguez*, the district court opined that "the *Davis* decision, retroactively effective, would clearly disqualify jury verdicts of substantive guilt based on the *Pinkerton* theory of liability," 2020 WL 1878112, at *17.  However, by the time of Pirk's direct appeal, *Rodriguez* had "been overtaken by the weight of authority . . . and [had] become the 'minority view' among District Courts in this Circuit."  *Pagan v. United States*, 568 F. Supp. 3d 156, 166 (D. Conn. 2021) (citing *United States v. Gomez*, No. 97-CR-696, 2021 WL 3617206, at *3 (S.D.N.Y. Aug. 16, 2021), *aff'd*, *Gomez*, 87 F.4th 100).

Additionally, the Second Circuit implicitly had called the minority view into question in an unpublished decision.  *Id.* (citing *Blanco*, 811 F. App'x at 701 n.2 (upholding a § 924(c) conviction premised on a bank robbery conviction and rejecting the defendant's argument that her conviction "must be vacated because she may have been convicted on a theory of *Pinkerton*, or co-conspirator, liability" because "[e]ven if the jury found Blanco liable for bank robbery based on *Pinkerton*, as opposed to under an aiding-and-abetting theory of liability, that would not somehow transform her conviction for *substantive* bank robbery into one for bank robbery conspiracy, implicating the residual-clause concerns explored in *Davis*") (emphasis in original)).

Ultimately, the majority view as reflected in *Gomez*, 2021 WL 3617206, became controlling law when the Second Circuit affirmed the district court's decision.  *See Gomez*, 87 F.4th at 104, 107-10.  Among other things, the Second Circuit held that "[b]ecause *Pinkerton* does not transform a substantive offense into a conspiracy offense, it does not

implicate *Davis*." *Id.* at 104; *accord, e.g., United States v. Guldi*, 141 F.4th 435, 447 (2d Cir. 2025); *Pannell v. United States*, 115 F.4th 154, 157 (2d Cir. 2024). As discussed above in connection with Ground One, the *Gomez* panel explicitly relied on *Blanco* as support for its conclusion. *Id.* at 110. Mr. Easton was not professionally unreasonable in declining to raise an appellate challenge that enjoyed only weak support among district courts and had been rejected in an unpublished Circuit opinion.

### 5.    Failure to Investigate Witnesses (Ground Five)

In his motion to amend, Pirk contends that Mr. Easton failed to investigate certain information provided by the prosecution regarding "the three people (eyewitnesses) seen leaving the scene," including "a lady crying hysterically, and two men holding her up to help her walk." (Dkt. 2021 at 2 (brackets omitted)). According to Pirk, he "pleaded" with Mr. Easton "to try and find these potential eyewitnesses, as it was reported in the newspaper." (*Id.*).

The decision "whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987). Such decisions, "if reasonably made, will not constitute a basis for an ineffective assistance claim." *Id.*; *see also United States v. Eyman*, 313 F.3d 741, 743 (2d Cir. 2002) ("A failure to call a witness for tactical reasons of trial strategy does not satisfy the standard for ineffective assistance of counsel."). "Moreover, a petitioner does not show that he was prejudiced by trial counsel's alleged deficient performance merely by asserting that certain witnesses might have supplied relevant testimony; rather, he must state exactly what

- 30 -

testimony they would have supplied and how such testimony would have changed the result." *Carr v. Senkowski*, No. 01-CV-689, 2007 WL 3124624, at *20 (W.D.N.Y. Oct. 23, 2007) (citing, *inter alia*, *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985)). The petitioner also must show that the witness would have testified at trial. *See*, *e.g.*, *Alexander*, 775 F.2d at 602; *Carr*, 2007 WL 3124624, at *22. "Courts have viewed claims of ineffective assistance of counsel skeptically when the only evidence of the import of a missing witness' testimony is from the [petitioner]." *Croney v. Scully*, No. CV-86-4335, 1988 WL 69766, at *2 (E.D.N.Y. June 13, 1988) (citing *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1984)), *aff'd*, 880 F.2d 1318 (2d Cir. 1989).

Pirk has not supported his failure-to-call-witnesses allegation against Mr. Easton with any of the required information—the names of the witnesses, the details of their expected testimony, how their testimony would have changed the outcome of the trial, and confirmation of their willingness to testify on Pirk's behalf. Therefore, he cannot establish professionally unreasonable performance or prejudice to the defense. This complaint against Mr. Easton is wholly speculative and does not provide a basis for habeas relief.

### 6.    Failure to Impeach Thomas Koszuta (Ground Six)

Pirk argues that Mr. Easton failed to impeach KMC member Thomas Koszuta ("Koszuta") on purported inconsistencies between his pretrial statements and his trial testimony. Specifically, Pirk claims that Koszuta told investigators that he saw Pirk with a black handgun, but at trial he said that he saw Pirk carrying a silver handgun.

Respondent claims that the record reflects that Koszuta testified that he had seen Pirk with a variety of firearms, including a chrome-colored "large-caliber revolver" (Dkt.

2032 at 21 (quoting A: 14367 (Dkt. 2032-6))), and a "black" semi-automatic handgun (*id.* (quoting A: 14368-69 (Dkt. 2032-6))).   However, it appears that the testimony that Respondent cites as support for this proposition reflects Koszuta's answers to the prosecutor's questions about the firearms carried by "Blaze," *i.e.,* Enix—not Pirk.

That said, the Court agrees that Mr. Easton was not ineffective in how he handled this issue.  As noted above, an attorney's decisions on whether and how to engage in cross-examination are strategic in nature and are presumed reasonable unless the defendant establishes otherwise. *See Nersesian*, 824 F.2d at 1321.  Here, Mr. Easton reasonably could have decided not to question Koszuta about the discrepancy between his pretrial statements and his trial testimony about the appearance of the gun he saw Pirk carrying.  At trial, Koszuta testified that he only saw Pirk with the "chrome-looking" revolver "[j]ust the once" at the South Buffalo KMC clubhouse.  (A: 14367 (Dkt. 2032-6)).  Had Mr. Easton confronted Koszuta with his pretrial statements, they could have jogged Koszuta's memory and led him to attribute an additional gun to Pirk, which would not have been helpful to the defense.  Pirk has failed to overcome the presumption that Mr. Easton acted reasonably considering all the circumstances.  Nor has he established that but for Mr. Easton's decision regarding Koszuta's cross-examination, there was a reasonable probability of a more favorable outcome.

### 7.    Failure to Object to Ballistics Photos (Ground Seven)

Pirk asserts that Mr. Easton "failed to object to the ballistic photos used as evidence" which he claimed had to be "manipulated (turned and maneuvered) in order to match up correctly, casting doubt on their accurateness and overall reliability."   (Dkt. 2021 at 3

(brackets omitted; misspelling corrected)).  Pirk has failed to identify the photographs to which Mr. Easton should have objected or the legal basis for the objection.  Therefore, he cannot show that Mr. Easton's decision not to object was professionally unreasonable or caused prejudice to the defense.  Pirk's allegations are too vague and conclusory to state a colorable claim for habeas relief.  *See*, *e.g.*, *Bjork v. Superintendent*, No. 9:15-CV-1097 (LEK), 2017 WL 3396528, at *9 (N.D.N.Y. Aug. 7, 2017) (where the petitioner "fail[ed] to identify the alleged 'inadmissible testimony' and d[id] not identify the legal basis on which the evidence was inadmissible," his "argument [was] too vague to state a claim for habeas relief" (citing *Brown v. New York*, No. 04-CV-1087 NG VVP, 2006 WL 3085704, at *7 (E.D.N.Y. Oct. 30, 2006) (finding that habeas petitioner's allegation of improperly admitted evidence was "no more than a vague and conclusory allegation" without "any facts, description, or specific citation to the trial transcript with respect to [the] alleged errors"); *Skeete v. New York*, No. 03-CV-2903, 2003 WL 22709079, at *2 (E.D.N.Y. Nov. 17, 2003) ("[V]ague, conclusory and unsupported claims do not advance a viable claim for habeas corpus relief.")).

### 8.    Failure to Object to Jospeh Michael Long's Testimony (Ground Eight)

Pirk asserts that Mr. Easton was ineffective because he failed to object when KMC member Joseph Michael Long ("Long") testified that Pirk "sold and had cocaine on him at all times, as well as cocaine whores."  (Dkt. 2021 at 4).  Pirk appears to be referring to the following exchange between the prosecutor and Long:

Q. Can you describe your conversations with Mr. Pirk in that regard?

> A. He always told me he carried a little cocaine for women, is the best way I can put it.
> Q. Did he say anything else along those lines?
> A. He would say "cocaine whores.'
> Q. Cocaine whores?
> A. Yes, sir.  I was just trying to be polite.
> Q. I understand.  What did he tell you he would use the cocaine for with these, as he put it, "cocaine whores"?
> A. Give them a little cocaine, and they would give him sex.

(Dkt. 1341 at 18).  Pirk does not specify the basis on which Mr. Easton should have objected, though he implies that the testimony was irrelevant and unduly prejudicial.

As a general matter, "it is well settled that in prosecutions for racketeering offenses, the government may introduce evidence of uncharged offenses to establish the existence of the criminal enterprise."  *United States v. Baez*, 349 F.3d 90, 93 (2d Cir. 2003).  Moreover, where defendants are charged with racketeering conspiracy, "'uncharged acts may be admissible as direct evidence of the conspiracy itself.'"  *Id.* (quoting *United States v. Thai*, 29 F.3d 785, 812 (2d Cir. 1994)).

As Respondent argues, the testimony from Long was relevant to proving the existence of the narcotics conspiracy and to establish Pirk's place in the KMC hierarchy and, by extension, the criminal enterprise.  *See*, *e.g.*, *Thai*, 29 F.3d at 812-13 (holding that defendants' uncharged acts, including beating, attempted extortion, and robbery, were admissible as evidence of existence and structure of the criminal enterprise, roles played by leadership, and discipline imposed on rank-and-file members); *United States v. Ashburn*, No. 11-CR-0303 NGG, 2015 WL 588704, at *3-5, *13-14 (E.D.N.Y. Feb. 11, 2015) (holding that the Government would be permitted to elicit from a confidential informant evidence of defendant's prior crimes and other acts, including his prior gang

affiliation and commission of multiple violent assaults, as the evidence was relevant to establish the background, hierarchy, and structure of the conspiracy charged in the case, and to show the defendant's leadership role in the criminal enterprise).

Relevant evidence nonetheless may be excluded if "its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). "To determine whether evidence is unfairly prejudicial, the court considers it in the context of the crime alleged. Evidence shall be excluded as unfairly prejudicial when it is 'more inflammatory than the charged crime.'" *United States v. Smothers*, 652 F. Supp. 3d 271, 284-85 (E.D.N.Y. 2023) (quoting *United States v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999)). Long' testimony regarding Pirk's practice of carrying cocaine to give to women in exchange for sex "did not involve conduct any more sensational or disturbing," *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990), than the crimes alleged in the indictment against Pirk, which included racketeering, multiple murders, and narcotics trafficking. *See*, *e.g.*, *United States v. Pitre*, 960 F.2d 1112, 1120 (2d Cir. 1992) (finding no unfair prejudice where "evidence of prior narcotics transactions 'did not involve conduct any more sensational or disturbing than the crimes with which [the appellants were] charged'").

"Failure to make a meritless argument does not amount to ineffective assistance." *United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999). Pirk has not identified any legal

- 35 -

basis for Mr. Easton to object to Long's testimony, much less one that had a colorable chance of success. Mr. Easton "cannot now be deemed ineffective for failing to make an argument or objection that stood little chance of success." *Cochran v. Griffin*, No. 918CV0175LEKTWD, 2021 WL 1223848, at *9 (N.D.N.Y. Mar. 31, 2021) (citing *Arena*, 180 F.3d at 396).

### 9. Inadequate Cross-Examination Preparation of Emmett Green (Ground Nine)

According to Pirk, Ms. Myers Buth "prepared for 3 days to question" KMC member Emmett Green ("Green"). (Dkt. 2021 at 4). Just before Green took the stand, Mr. Easton told Ms. Myers Buth that he was going to conduct the cross-examination instead. (*Id.*). Pirk asserts that "as a result of his unpreparedness," Mr. Easton "did a horrible and poor job of questioning" Green. (*Id.*).

"Decisions whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature." *United States v. Eisen*, 974 F.2d 246, 265 (2d Cir. 1992) (quoting *Nersesian*, 824 F.2d at 1321). Pirk has provided no details concerning why Mr. Easton's cross-examination of Green was "horrible" and "poor," how Ms. Myers Buth would have cross-examined Green differently, and why there would have been a reasonable probability of a more favorable verdict had Ms. Myers Buth conducted the cross-examination as originally planned. Thus, Pirk cannot demonstrate that Mr. Easton's cross-examination of Green was professionally unreasonable, or that but for the alleged last-minute change as to who would cross-examine Green, his defense was prejudiced.

### 10.     Failure to Impeach Ryan Myrtle (Ground Ten).

Pirk faults Mr. Easton for failing to impeach KMC member Ryan Myrtle ("Myrtle") with a prior bad act.  Myrtle testified that he was an ordained minister, and Pirk asserts that Mr. Easton should have confronted him with an alleged incident of stealing which led to Myrtle being removed from his church congregation.  (Dkt. 2021 at 4-5).

As noted above, "[d]ecisions whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature."  *Eisen*, 974 F.2d at 265 (quoting *Nersesian*, 824 F.2d at 1321).  Pirk has supplied no evidence substantiating this allegation against Myrtle.  Thus, Pirk cannot demonstrate that Mr. Easton's strategy during Myrtle's cross-examination was professionally unreasonable, or that, but for the omitted line of questioning, there was a reasonable probability of a more favorable outcome at trial.

Furthermore, courts in this Circuit regularly have held that "[e]vidence that would be offered solely to further impeach a witness whose character was shown at trial to be questionable is merely cumulative and is not 'material'" to the verdict.  *Graves v. Cunningham*, No. 09 CIV. 5837, 2010 WL 2942614, at *16 (S.D.N.Y. May 26, 2010) (citing *United States v. Tutino*, 883 F.2d 1125, 1140 (2d Cir.1989)), *adopted*, No. 09 CIV. 5837, 2010 WL 2985473 (S.D.N.Y. July 27, 2010).

As Respondent notes, "[t]he voluminous trial record establishes that the jury was well aware" that Myrtle was "not a model citizen."  *Chamberlain v. Mantello*, 954 F. Supp. 499, 511 (N.D.N.Y. 1997).  For example, Myrtle admitted he had pled guilty to RICO conspiracy in connection with his activities and membership in the KMC.  (Dkt. 1359 at 49-50).  Myrtle further testified that during his tenure in the KMC, he disciplined other

members by physically assaulting them.  (*Id.* at 13).  Myrtle's removal from his congregation for stealing was relatively mild in comparison to the other egregious behavior in which Myrtle had engaged.  As the omitted stealing incident was cumulative to the grounds on which Myrtle's character was impeached, there is no reasonable probability that it would have caused the jurors to disqualify Myrtle's testimony, let alone reach a different verdict.  Therefore, Pirk cannot demonstrate he was prejudiced by Mr. Easton's cross-examination strategy as to Myrtle.

## IV.    CONCLUSION

For the reasons set forth above, the § 2255 motion (Dkt. 1976) is denied, and the motion to amend (Dkt. 2021) is denied.  Because Pirk has not made a substantial showing of the denial of a constitutional right, 28 U.S.C. § 2253(c)(2), a certificate of appealability will not issue.  The Clerk of Court is directed to enter judgment in Respondent's favor and to close case number 1:23-CV-1052 EAW.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:    July 13, 2026
          Rochester, New York